377 P.2d 789

Everett L. SAULLS, Claimant-Respondent,

v.

EMPLOYMENT SECURITY AGENCY,
Defendant-Appellant,

U. S. Department of Interior, Bureau of
Indian Affairs, Employer, Defendant.

In the matter of Claim for Unemployment
Compensation for Federal Employees.

No. 9125.

Supreme Court of Idaho.

Jan. 9, 1963.

Vern E. Herzog, Jr., Pocatello, Jones, Pomeroy & Jones, Pocatello, for respondent.

John W. Gunn, Boise, for appellant.

McQUADE, Justice.

Claimant, Everett L. Saulls, prior to the fall of 1960 had been employed as a ditch rider for 16 seasons by the Fort Hall Agency, Bureau of Indian Affairs, hereinafter referred to as the Agency. The Bureau of Indian Affairs will be referred to as the Bureau. During this time, when no work was available for ditch riders, they were "laid off" by a procedure kncwn as "reduction in force," and were eligible for unemployment benefits. Once laid off by this procedure, it was necessary to reprocess the individual when he returned to work.

In the fall of 1960, the Bureau proposed a new policy. Under the proposed policy, employees, when working, would be placed in "When Actually Employed" (WAE) status. This new procedure would avoid the necessity of terminating employment of employees when work was not available. Nor would it be necessary to re-process employees upon returning to work. Through this change employees would be paid only when actually employed.

Claimant was notified of the proposal by a Bureau letter of October 19, 1960. Agency officials were of the opinion that unanimous consent of the employees was necessary to effectuate this proposed change in policy, although the letter to claimant did not so state. The letter, after explaining the effect on the employee, if he accepted the change to WAE status, further stated:

"If you do not wish to accept this offer, it will be necessary to separate you from your present position effective at the close of business November 30, 1960, * * *.

"There are no positions in your competitive area occupied by employees in lower tenure subgroups for which you qualify and to which you can be assigned. * * * If you want help in obtaining employment elsewhere, Mr. Frell Owl will gladly advise and assist you to the greatest extent possible,. * * *.

"This action is taken in accordance with the Civil Service Retention Preference Regulations. A copy of the regulations may be examined at the Fort Hall Agency, together with retention registers and other records which have a bearing on this action. If, after your examination of the retention register and other records, you believe that there has been a violation of your rights under the Regulations, you may appeal for a review of this action to the 11th U. S. Civil Service Region, * * *".

At the close of the letter, provision was made whereby the claimant could mark the appropriate place to indicate whether the "offer of the change to WAE" was or was not acceptable to him. Claimant returned the letter with a mark in the space indicating the change to WAE status was not acceptable to him. A. K. Draper, Irrigation Project Manager for the Agency, testified he contacted claimant at his home and inquired if he would change the answer to the affirmative. Draper further testified he was uncertain if the claimant or claimant's wife agreed to the change but that he, Draper, changed the answer in the letter to the affirmative. Claimant asserts he did not talk to Draper and did not authorize Draper to make this change.

Agency officials, concluding that claimant intended to terminate his employment, sent a prospective employee to look at the home of the claimant, provided by the Agency, to see if he would be willing to live there. On December 7, 1960, claimant received a Standard Form (SF) 8, indicating he was being placed on non-pay status by virtue of reduction in force. On December 8, 1960, claimant moved out of the house furnished by the Agency and another employee moved in. On December 9, 1960, Mr. Olney, Agency Administrative Officer, requested claimant to come to his office. At the office, Olney asked claimant to sign a resignation form. Claimant complied with Olney's request and signed a resignation form.

After moving to Salmon, Idaho, claimant was sent two additional Standard Form 8's, one dated December 7, 1960, which stated claimant was placed on non-pay status as of the close of business on that date, giving the reason that his annual and sick leave had been exhausted and further that claimant's health would not permit heavy work. The other form indicated claimant had resigned effective close of business December 9, 1960.

On the 17th day of December, 1960, claimant made application for unemployment benefits. This application was made to the Employment Security Agency for the State of Idaho, pursuant to an agreement entered into between the Secretary of Labor, United States Department of Labor, and the Idaho Employment Security

Agency. In his application, claimant stated his reason for leaving work with the Agency was that he had been "laid off" due to a reduction in force. This reason is in conformity with the first Standard Form given claimant on December 7, 1960. The Agency, however, contended claimant had resigned from WAE status on December 9, 1960. This contention by the Federal employing Agency is based on the Standard Form last sent to the claimant.

The Employment Security Agency denied claimant's application for unemployment benefits and claimant thereafter sought a hearing before the Appeals Examiner of the Idaho Employment Security Agency. The Appeals Examiner granted a hearing for the purpose of determining "if the claimant's unemployment is due to the fact that he left his employment voluntarily without good cause."

Hearings were had March 16, 1961, at Salmon, Idaho, and June 9, 1961 at Pocatello, Idaho. At the Salmon hearing, claimant testified he had marked the letter to indicate that a change to WAE status was not acceptable to him because thereby he would be prevented from receiving unemployment compensation benefits and also because part time work available to him from the Agency would not provide sufficient income to enable him to "keep up." Claimant further testified he thought he would be completely separated from his employment due to the fact he had indicated WAE status was unacceptable to him, and that it was his desire to be so separated.

The hearing examiner found claimant had first marked the letter of October 19, 1960, to indicate the change to WAE status was not acceptable to him; that claimant subsequently agreed to approve the change to WAE at the request of Draper; that claimant did intend, however, to leave the Agency; that Claimant, on December 7, 1960, received a form indicating that he was laid off due to a reduction in force; that on December 9, 1960, claimant signed the resignation form; and that he thereafter received two forms, the latter indicating the reason for termination was that claimant resigned. The examiner further found that the actual reason for changing the letter of October 19, 1960 to indicate a change to WAE status was acceptable to claimant "was for the convenience of the Agency and not because the claimant wanted such status. Similarly, the completion of the resignation seems to have been initiated by the Agency rather than the claimant."

The examiner concluded that federal law covering payment of unemployment compensation for federal employees requires that the findings of the Federal Agency as to the individual's reason for termination of service shall be conclusive, and therefore he must accept the Agency's determination that claimant resigned. In fur-

ther concluding that additional work was available to claimant, the Examiner held "That the claimant's unemployment is due to the fact that he left his employment voluntarily without good cause and he is ineligible for benefits."

Claimant filed a claim for review with the Industrial Accident Board of the State of Idaho. The Industrial Accident Board held a hearing on November 9, 1961, in Boise, Idaho. At this hearing Mrs. Saulls testified claimant had been replaced at the Agency by another employee prior to the time he had signed the resignation form and that at the time Saulls signed the resignation form, he did not have prospects of entering into ranch work. Saulls reiterated that the change to WAE status was unacceptable to him and that the letter was not changed in his presence to indicate acceptance.

After reviewing evidence presented at all hearings, the Industrial Accident Board entered an order reversing the decision of the Appeals Examiner. The order is based on findings and rulings of the Industrial Accident Board, to-wit:

"From a preponderance of the evidence the Board finds that claimant did not voluntarily quit his job as ditch rider, but was coerced by the management to do so, in order that the management might effect a change of policy which required the unanimous consent of the workers involved. The practical effect of the management's action was a discharge of claimant without good cause, not for misconduct in connection with his employment."

A petition for rehearing was filed. The petition for rehearing was denied and the Employment Security Agency now appeals from the order of the Industrial Accident Board.

Appellant's assignments of error are primarily based on the contention that the "findings of the Federal employing agency *is* final as to the reasons for termination of employment, * * * and the Board lacks jurisdiction to reverse the matter and to change the findings of fact regarding the reasons for termination", and therefore, "the Board erred in assuming unlawfully the jurisdiction to alter in any way the findings of fact as to the reason of termination by the employing Federal Agency."

The Federal statutes, insofar as they are pertinent to this case, provide as follows:

42 U.S.C.A. § 1362(a) "The Secretary is authorized on behalf of the United States, to enter into an agreement with any State, or with the agency administering the unemployment compensation law of such State, under which such State agency (1) will make, as agent of the United States, payments of compensation, on the basis provided in subsection (b) of this section, to

Federal employees, and (2) will otherwise cooperate with the Secretary and with other State agencies in making payments of compensation under this subchapter.

"(b) Any such agreement shall provide that compensation will be paid by the State to any Federal employee, * * * in the same amount, on the same terms, and subject to the same conditions as the compensation which would be payable to such employee under the unemployment compensation law of the State if the Federal service and Federal wages of such employee assigned to such State under section 1364 of this title had been included as employment and wages under such law.

"(c) Any determination by a State agency with respect to entitlement to compensation pursuant to an agreement under this section shall be subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law, and only in such manner and to such extent."

42 U.S.C.A. § 1367 "(a) All Federal departments, agencies * * * of the United States are directed to make available to State agencies which have agreements under this subchapter or to the Secretary, as the case may be, such

information with respect to the Federal service, and Federal wages of any Federal employee as the Secretary may find practicable and necessary for the determination of such employee's entitlement to compensation under this subchapter. Such information shall include the findings of the employing agency with respect to * * *

"(4) the reasons for termination of such service.

" * * * Any such findings which have been made in accordance with such regulations shall be final and conclusive for the purposes of sections 1362(c) and 1363(c) of this title."

▮ Pursuant to provisions of the above quoted Federal statutes, the findings of the Federal Agency as to an employee's reason for termination of service have been held to be final and conclusive in state proceedings to determine entitlement of Federal employees to unemployment compensation benefits. Neumeyer v. Unemployment Compensation Bd. of Rev., 187 Pa.Super. 321, 144 A.2d 606; Naugle v. Unemployment Compensation Bd. of Review, 194 Pa.Super. 420, 168 A.2d 783; McKeon v. Unemployment Compensation Bd. of Review, 195 Pa.Super. 69, 169 A.2d 332. However, the findings of the Federal employing Agency are final and conclusive only with respect to matters enumerated in the statutes. Neumeyer v. Unemploy-

ment Compensation Bd. of Rev., supra. On all others matters relating to determination of entitlement of a Federal employee to unemployment compensation benefits, state law prevails. 42 U.S.C.A. § 1362(b). Furthermore, any determination by a State agency with respect to entitlement to compensation under Idaho law is subject to review by this Court. I.C. § 72–608; 42 U.S.C.A. § 1362(c). Accordingly, while findings of a Federal employing Agency that claimant resigned may be final and conclusive as to reasons for the termination of service of claimant, it is necessary to determine whether claimant is entitled to unemployment compensation benefits under Idaho law, notwithstanding the fact that he resigned from his position with the Agency. This principle is aptly pointed out in McKeon v. Unemployment Compensation Bd. of Review, supra, where that Court stated:

> "The Pennsylvania compensation authorities must accept as a fact that the claimant was discharged from his job * * *. The Pennsylvania authorities must then determine whether, *under Pennsylvania law,* this conduct for which the claimant was discharged constituted willful misconduct connected with his work *under Pennsylvania law."* (Emphasis supplied.)

■ I.C. § 72–1366(f) provides that an individual is entitled to unemployment compensation benefits if he meets all other requirements and it is found that the individual's "unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment * * *." Thus, while it is a fact that claimant resigned, Idaho authorities must apply Idaho law to determine if claimant voluntarily left his employment without good cause.

"Good cause," within the meaning of I.C. § 72–1366(f), is not susceptible of an exact definition. Rather, the meaning of these words must be determined in each case from the facts of that case. Roby v. Potlatch Forests, 74 Idaho 404, 263 P.2d 553. In Bliley Electric Co. v. Unemployment Comp. Bd. of Rev., 158 Pa.Super. 548, 45 A.2d 898, that Court held:

> "When therefore the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment, the decision is voluntary in the sense that the worker has willed it, but involuntary because outward pressures have compelled it. Or to state it differently, if a worker leaves his employment when he is compelled to do so by necessitous circumstances or because of legal or family obligations, his leaving is voluntary with good cause, and under the act he is

**220**

entitled to benefits. The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment."

In National Furniture Mfg. Co. v. Review Bd. of Ind., E.S.D., 131 Ind.App. 260, 170 N.E.2d 381, the Court held as follows:

"We are of the opinion that all of the circumstances * * * in each case of voluntary quitting have to be considered, and that if there are other factors involved, such as provocation brought on by unjust reprimands or unjust discrimination between employees or any other evidentiary factors which would have strong influential effect upon the mind of the employee contributing to or causing him to voluntarily quit his employment, such contributing factors might, under certain circumstances, be considered as good cause within the purview of the Act, sufficient to enable the employee voluntarily quitting his job to secure compensation under the Act * * *"

■ Facts of the instant case compel us to conclude that the Board was correct in determining that claimant resigned with good cause. The facts of this case "would have strong influential effect upon the mind of the employee contributing to or causing him to voluntarily quit his employment," and, under the circumstances of this case, may "be considered as good cause within the purview of the Act, sufficient to enable the employee voluntarily quitting his job to secure compensation under the Act * * *." National Furniture Mfg. Co. v. Review Bd., of Ind. E.S.D., supra.

■■ Appellant contends the findings of fact and order of the Industrial Accident Board are erroneous because they reverse the determination made by the Federal employing Agency that claimant resigned. In so far as the findings of the Board reverse the determination of the Examiner that claimant resigned they are in error. The findings support the conclusions that claimant resigned for good cause. Where final judgment or order of a lower tribunal is correct, but entered upon an erroneous theory, the judgment or order will be affirmed by the appellate court upon the correct theory. Jorgenson v. Stirling, 35 Idaho 785, 209 P. 271; see also: Feehan v. Kendrick, 32 Idaho 220, 179 P. 507. Accordingly, the order of the Board is affirmed.

Costs to respondent.

KNUDSON, C. J., McFADDEN and SMITH, JJ., and MARTIN, D. J., concur.