671 P.2d 468

Susan L. BERGER, Claimant-Appellant,

v.

NEZ PERCE SHERIFF,
Employer-Respondent,

and

State of Idaho, Department of
Employment, Respondent.

No. 14447.

Supreme Court of Idaho.

Oct. 20, 1983.

Randall W. Robinson, Idaho Legal Aid Services, Lewiston, for claimant-appellant.

William B. Russell, Jr., Lewiston, for employer-respondent.

Jim Jones, Atty. Gen., Rebecca Thomas, Deputy Atty. Gen., Boise, for respondent.

HUNTLEY, Justice.

Claimant appeals from an Industrial Commission order denying her application for unemployment benefits. The question presented is whether her voluntary resignation was for good cause. The facts are essentially undisputed.

Claimant, Susan Berger, was employed by the Nez Perce County Sheriff's Office when she became engaged to a co-worker, Lyle Berger. About six months before their marriage they became aware that the sheriff interpreted the county's nepotism policy to prohibit employment of a married couple by the department. Five days before their marriage the sheriff informed Susan that either she or Lyle would have to resign after their marriage. Both Susan and Lyle then resigned, reasoning that since both were equally well qualified and both shared a desire to make law enforcement a career, it would be unfair for either one to expect the other to resign alone. They elected to resign rather than await discharge because a discharge would negatively affect future employment possibilities. Lyle resigned on March 18, 1981, and Susan resigned five days later. They then moved to the Spokane area to seek employment in law enforcement. Failing to find employ-

ment, they returned to the Lewiston area and Susan applied for unemployment insurance benefits.

Claimant contends that her voluntary resignation was made necessary by her employer's enforcement of the anti-nepotism policy, that the policy was wrongly enforced as against claimant and her husband, and that therefore her resignation was for "good cause." [1]

■ While this Court has established guidelines, as a matter of law, for determining whether a person's reasons for quitting or refusing employment constitute "good cause" within the meaning of the statute,[2] the guidelines are necessarily general and a determination of good cause in a particular case depends primarily on the facts of that case. *Ellis v. Northwest Fruit & Produce,* 103 Idaho 821, 654 P.2d 914 (1982); *Saulls v. Employment Security Agency,* 85 Idaho 212, 377 P.2d 789 (1963). This Court will therefore review the Commission's determination on the question of good cause and the legal standards applied, but with requisite deference being paid to factual findings which make up the basis for such determination. *See, Ellis v. Northwest Fruit & Produce, supra.*

■ In the present case the Commission determined that claimant did not have good cause to resign because at the time of her resignation her husband was no longer working for the sheriff's office, and the requirements of the anti-nepotism policy, as erroneously interpreted by the sheriff, were nevertheless complied with. Claimant's decision that both she and her husband would resign was not prompted in any way by her employer since he had advised that only one would have to leave. After her husband had already resigned, claimant's resignation was unnecessary, except for her personal purpose of maintaining fairness between

herself and her husband. We cannot say that the Commission erred in holding that such a reason did not constitute good cause. The order of the Industrial Commission is affirmed.

Costs to Respondents. No attorney fees allowed.

DONALDSON, C.J., and BAKES, J., concur.

SHEPARD, Justice, dissenting.

I cannot agree with the ultimate conclusion of the majority that claimant did not have good cause to voluntarily quit her employment.

Although there may be, and I suspect there is, more to this case than is contained in the record, we are restricted to that record. It provides only these facts: Plaintiff and her fiance were employees of the Sheriff of Nez Perce County and their job performance was, from all indications, satisfactory in every way; their experience and job qualifications for their positions were approximately equal; when claimant and her finance decided to marry, the Sheriff, probably sincerely, but wrongfully, advised them that the county nepotism policy prohibited employment of a husband and wife team and that one of them must therefore resign; claimant met with the sheriff and attempted to work out some method of saving both jobs, which included her offer to transfer to another part of the sheriff's department, but the sheriff rejected all offers and reiterated the necessity of resignation; and, as noted in the majority opinion, both claimant and her fiance then resigned. The majority correctly points out that, absent resignation, one or the other would have been discharged and a discharge would have had a negative effect on his or her future employment possibilities. I note

1. As shown in the record, the sheriff's interpretation of the anti-nepotism policy was incorrect. The policy was directed to favoritism in "appointment" or hiring, and would not apply in a situation such as here where present employees, unrelated when hired, become related thereafter.

2. I.C. § 72–1366(e).

that the record does not demonstrate which of them would have been discharged absent resignation, and hence each could and undoubtedly did fear discharge.

There is no question presented but that the sheriff had authority to discharge either or both, or that he could have demanded the resignations of either or both, but the question is, having taken that action, could the sheriff (and the Department of Employment) then have denied claimant unemployment compensation benefits?

The author of the present majority also authored the opinion of the Court in *Ellis v. Northwest Fruit and Produce*, 103 Idaho 821, 654 P.2d 914 (1982), the latest expression of this Court on the question of "good cause" for leaving employment. There the Court affirmed the denial of unemployment benefits on the basis that "[the claimant] quit his employment one evening without having first ever directly and specifically met with his employer to determine whether the problems could be worked out." *Id.,* 103 Idaho at 822, 654 P.2d at 915. In the instant case, clearly the claimant met with her employer to attempt to work out the problems, which effort was rejected by her employer. As stated in *Ellis,* quoting from *Custom Meat Packing Co. v. Martin,* 85 Idaho 374, 384, 379 P.2d 664, 670 (1963), "the policy of the law is to encourage the employer and the employee to adjust their differences and thus avoid interrupting the employment." *Ellis, supra,* 103 Idaho at 823, 654 P.2d at 916. In *Ellis,* the Court further quoted from *Burroughs v. Employment Security Agency,* 86 Idaho 412, 414, 387 P.2d 473, 474 (1963):

> "In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to

the supersensitive." *Ellis, supra,* 103 Idaho at 823, 654 P.2d at 916.

*See Saulls v. Employment Security Agency,* 85 Idaho 212, 220, 377 P.2d 789, 793 (1963), for an analogous set of circumstances under which the Court held that "good cause" existed, stating, "The pressure of necessity, of legal duty, or family obligations, or other overpowering circumstances and his capitulation to them transform what is ostensibly voluntary unemployment into involuntary unemployment." *See also Meyer v. Skyline Mobile Homes,* 99 Idaho 754, 589 P.2d 89 (1979).

Under the circumstances of the instant case, I would hold that the claimant was clearly compelled and coerced to leave her employment (albeit the actions of the sheriff may have been in perfect good faith); that her decision to quit was brought about by real and substantial circumstances which were not imaginary or trifling; that her decision was reasonable and not whimsical; and that her decision would have been made in the same way by the average man or woman.

There is no question but that the claimant was informed that if she married her fiance, one of them would be discharged. Under that threat, they both resigned. In my mind, the fact that her fiance resigned five days before she did has no relevancy. Both resignations came about as a result of the wrongful threat of discharge. I would reverse.

BISTLINE, J., concurs.