695 P.2d 1250

**Harry Ray HORNER,
Claimant-Appellant,**

v.

**PONDEROSA PINE LOGGING, Employer, and Insurance Company of North America, Surety, Defendants-Respondents.**

No. 15200.

Supreme Court of Idaho.

Feb. 12, 1985.

John B. Ingelstrom, and Gary L. Cooper, Pocatello, for claimant-appellant.

Alan R. Gardner, Boise, for defendants-respondents.

McFADDEN, Justice Pro Tem.

Claimant Harry Horner seeks worker's compensation benefits for a heart attack he claims occurred on or about July 23, 1981, while he was working as a logger. Claimant's case was assigned by the Industrial Commission (the Commission) to a referee. Evidence was submitted to the referee by depositions of doctors, documents and claimant's oral testimony before the referee. The record discloses the following.

At the time of the incident, claimant was 40 years old. He had spent most of his life near the Oregon coast at an elevation of about 1,000 feet. Claimant had been logging since he was 18.

In 1981, claimant was called by Ponderosa Pine Logging (Curtis Williams and Wade Fairchild) to work in their logging operation in southeastern Idaho. Claimant accepted the job and moved to Idaho on June 2 or 3, 1981. He began working in an area known as Georgetown Canyon in Bear Lake County at an elevation of over 7,000 feet and resided with his family near the work site.

Claimant initially worked with his son cutting timber. Then, about the third week in June, Fairchild and Williams went to another location to log additional timber, leaving claimant with the additional responsibility of hauling the logs to the landing in the Georgetown Canyon area by himself. This work involved climbing on and off the skidder, pulling cables across the terrain, and attaching the cables with chokers to the logs. Claimant found this work to be more strenuous than simply cutting the timber.

About a week after claimant had assumed these new responsibilities, he began to suffer a painful burning sensation in his chest. He noticed it in the morning after he commenced working and two or three times a day. He would relieve the pain by stopping and resting. This continued for about two weeks. On July 22, the claimant's pain increased and was not relieved by resting. He left work that morning, returned home and rested for the remainder of the day. That night when the pain, described by claimant as throbbing and surging, became more intense he was taken to the hospital at Montpelier, Idaho.

He was examined in the emergency room by Dr. Noel Wolff, a family practitioner in Montpelier, Idaho. Dr. Wolff's written history indicates that the claimant complained that the pain had occurred suddenly while the claimant was logging. The history also shows that claimant's mother, father and brother all had heart trouble and that claimant had been a heavy cigarette smoker. Claimant was admitted to the hospital at 1:00 a.m. on July 23. The hospital admission report shows that claimant's pain began after a heavy meal while he was working at 7,000 feet as a lumberjack.

The electrocardiograms taken while claimant was in the hospital indicated a poor blood supply to the heart muscle which caused the claimant's pain. Another test showed the enzymes were normal. However, no heart attack was diagnosed. Dr. Wolff instructed claimant to consult

claimant's own physician in Oregon after claimant returned to his Oregon home. Dr. Wolff considered claimant's condition unstable and that claimant was a candidate for a future heart attack. Claimant was discharged on July 25.

The following morning, claimant again suffered severe chest and arm pain and returned to the hospital. He was again treated by Dr. Wolff. This time, enzyme tests and electrocardiograms showed that claimant had experienced a heart attack—myocardial infarction. Dr. Wolff testified that claimant's work at an altitude to which claimant was not accustomed contributed to the heart attack. Dr. Wolff also suspected arteriosclerosis, a disease process occurring over a long period of time, as a contributing factor.

After claimant returned to Oregon, he was examined by Dr. Gurney, a family practitioner, in Myrtle Point, Oregon, and Dr. Robinhold, a cardiologist in Eugene, Oregon. Dr. Gurney testified that the combination of hard physical work at 7,000 feet with a pre-existing coronary disease caused the claimant's heart attack. The referee, however, found that Dr. Gurney did not have an accurate history of the occurrence and thus found his testimony of little value.

Dr. Robinhold performed a coronary angiogram in August, 1981, and found an occlusion of one of claimant's coronary arteries. He testified that the occlusion caused the heart attack but would not offer an opinion as to the cause of the occlusion. The referee's findings indicate that he found Dr. Robinhold skeptical of work as a cause of claimant's heart attack.

Ponderosa Pine retained Dr. Smith, a cardiologist practicing in Boise, to review the claimant's medical records and the depositions of the other doctors. Dr. Smith testified that claimant suffered angina pain during the weeks before July 22 and a heart attack on July 26. Dr. Smith recognized that increased activity causes increased heart action which in turn requires a greater oxygen supply to the heart. However, Dr. Smith stated that activity does not cause a worsening or narrowing of the artery, which is a long-term disease process. He stated that the work may have caused the pain, but not the disease process itself. He concluded that physical activity did not cause claimant's heart attack—myocardial infarction.

The referee found that claimant's work did not cause his heart attack and denied claimant's application. He was specifically persuaded by the time lag between claimant's cessation of work on July 22 and claimant's heart attack on July 26, and both cardiologists' testimony. The Commission thereafter adopted and affirmed the referee's findings and conclusions. This appeal followed.

Claimant raises two issues on appeal.

1. When the factual findings of a referee are adopted by the Commission, is a more detailed review by the Supreme Court required than would be given if the Commission had heard the matter in the first instance?

2. Whether there was sufficient and competent evidence to support the determination that claimant's myocardial infarction was not aggravated or accelerated by his work activities?

Each issue will be discussed in turn.

I.

Claimant contends that his case is entitled to close review by this Court. In support of his position, claimant first argues that by merely adopting the referee's findings and conclusions and not hearing the evidence in the first instance, the Commission acted as an appellate tribunal. Therefore, claimant concludes that the Commission's decision must not be accorded deference by this Court.

However, we have consistently held that "even where witnesses do not appear before the Industrial Commission this Court will not independently adopt findings of fact at variance with those of the Industrial Commission ...." *Mager v. Garrett Freightlines, Inc.*, 100 Idaho 469, 471, 600 P.2d 773, 775 (1979). *See also, Booth v.*

*City of Burley,* 99 Idaho 229, 232, 580 P.2d 75, 78 (1978). Instead, this Court will only review the Commission's findings to determine whether they are supported by substantial and competent evidence. ID. CONST. art. 5, § 9; I.C. § 72–732. That determination is raised by claimant's second issue and is found in Part II of this opinion.

Claimant next contends that *Van Heukelom v. Pine Crest Psychiatric Center,* 106 Idaho 898, 684 P.2d 300 (1984) requires the Commission to independently consider *all* the evidence of record. Claimant points out that the Commission did not have a written transcription of the oral proceedings before the referee until after the Commission had already affirmed the referee's findings of fact and conclusions of law. Claimant contends that since the Commission could not review the claimant's oral testimony as required by law, that his case is entitled to closer review by this Court.

 Claimant's argument is unpersuasive. In Idaho, as in most states, there is a presumption of regularity in the performance of official duties by public officers. *Farm Bureau Fin. Co., Inc. v. Carney,* 100 Idaho 745, 750, 605 P.2d 509, 514 (1980). In this case, the Order of the Commission states:

> "The Commission has reviewed the record and the foregoing Findings of Fact, Conclusions of Law and Order, and hereby approves and confirms the same, and adopts them as the Decision and Order of the Commission. The Decision is ordered filed by the Secretary of the Commission.
>
> "DATED and FILED the 11 day of August 1983."

At oral argument, respondents' counsel stated that at the time the Commission entered its order, a tape recording of the oral testimony before the referee was available to the Commission. Counsel for the claimant has not controverted this assertion. An affidavit by the shorthand reporter for the Commission states that he reported the proceedings in this case, and that the testimony was also recorded on tape, which was available to the Commission for review at all times subsequent to the hearing. Respondents' counsel moved that the affidavit be filed. The Court grants this motion and orders that it be filed. Accepting the presumption of regularity of proceedings, *supra,* we can presume that the Commission reviewed the tape recording of the hearing along with the rest of the record in reaching its decision. Therefore, in this case a closer review of the record is not justified.

Claimant's citation of *Van Heukelom* in support of his position is misplaced. Our decision to remand in that case was for the purpose of determining whether a tape recording was available to the Commission. No such uncertainty exists here.

## II.

Claimant also challenges the sufficiency of the Commission's factual findings and conclusions of law. Claimant asserts that claimant's extremely heavy exertion, at an elevation of 7,000 feet and at temperatures near freezing caused or contributed to his heart attack.

Compensation is recoverable where an employee's work causes an injury to the employee which results in violence to the physical structure of the body or causes an accident which aggravates or accelerates a previous disease *condition of the employee,* and an employee must establish his employment caused or contributed to his injury— here the myocardial infarction. *Bush v. Bonner's Ferry School Dist. No. 101,* 102 Idaho 620, 621, 636 P.2d 175, 176 (1981).

██ In almost every contested cardiac case, as in the instant one, there is a conflict in the testimony of the medical witnesses over the cause of the particular heart attack. For example,

> "several years ago a study by a committee of the California Heart Association pointed up the uncertainty of 'reasonable medical certainty' in heart cases. After a panel of five cardiologists, internists and other physicians well experienced in heart disease had reviewed 319 compen-

sation cases in an attempt to answer certain questions pertaining to causation it was found that in only 47 of the 319 cases did all five doctors agree. In 90 cases four doctors agreed. In 215 cases three agreed and in 48 cases only two could agree, and could not even formulate a majority opinion. Further, where 101 of the same records were again reviewed by the panel without its knowing the records had been seen previously, in 30 percent of the opinions the doctors reversed themselves!"

Comment, *Heart Attacks and the Pennsylvania Workmen's Compensation Act: Establishing the Causal Relationship Between Employment and Injury*, 81 Dick. L.Rev. 111, 112–113 n. 10 (1976–77). This inconclusiveness will always make the Commission's determination a difficult one. Nonetheless, the Commission's determination of this issue will not be overturned by this Court as long as the determination is supported by substantial and competent evidence. *Bush v. Bonners Ferry School Dist. No. 101, supra* at 622, 636 P.2d at 177. ID. CONST. art. 5, § 9; I.C. § 72–732.

In the instant case, the Commission found that while claimant's pain may have been caused by his strenuous work, claimant's heart attack, which occurred four days after claimant ceased working, was not caused by claimant's work but was due to an accelerating coronary disease. The Commission concluded that since pain alone is not compensable (because it does not cause violence to the physical structure of the body) claimant was not entitled to worker's compensation benefits. *See Bush v. Bonners Ferry School Dist. No. 101, supra.*

■ The Commission's findings and conclusions are supported by substantial and competent evidence. When asked whether claimant's work caused his heart attack, Dr. Robinhold testified that he could not form an opinion in claimant's case.

"A. If you're asking for a causal relationship, I don't have an opinion at this point.

. . . .

"Q. Have you formed any kind of an opinion as to whether or not any work activity this gentleman was doing caused the myocardial infarction?

"A. No. I tend to be skeptical of work-caused infarctions because most infarctions I see occur without any obvious trigger or temporal relationship."

Dr. Smith testified that upon review of the depositions of the other doctors and the hospital records, he concluded that claimant's work did not cause claimant's heart attack.

"A. The opinion would be that the work activity did not precipitate the myocardial infarction.

. . . .

"Based on the records that I have reviewed, it would appear that he had a number of cardiac risk factors, or things that accelerate. Cigarette smoking and perhaps his weight.

. . . .

"So I think what we see is a fairly typical progression that we often see with people with coronary disease and that is probably for fifteen years or more there is a slow progression of narrowing and it reaches a point where it becomes critical. Generally symptoms are precipitated. Sometimes by activity and sometimes not.

. . . .

"I think it was developmental."

When questioned whether the altitude at which claimant worked or the heavy physical labor claimant performed aggravated claimant's condition, Dr. Smith testified that "[t]hese activities do not in themselves cause worsening of the narrowing or worsening of the basic process." Thus, both doctors' testimony supports the Commission's determination. Therefore, the Commission's determination must be upheld.

■ Claimant challenges the Commission's heavy reliance on Dr. Smith's testimony instead of the testimony of the attending physician, Dr. Wolff or the family physician, Dr. Gurney. However, the Com-

mission is not bound to accept the opinion of any particular doctor. *Paulson v. Idaho Forest Industries, Inc.,* 99 Idaho 896, 901, 591 P.2d 143, 148 (1979). The Commission's reliance on Dr. Smith's testimony was not improper.

The order of the Industrial Commission is affirmed.

Costs to respondents.

No attorney fees on appeal.

DONALDSON, C.J., SHEPARD, J., and WALTERS, J. Pro Tem., concur.

BISTLINE, Justice, concurring specially and dissenting in part.

Although I have joined the opinion for the Court, I do so with some trepidation which is occasioned by the similarity this case bears to *Johnson v. Amalgamated Sugar Co.,* (Idaho Sup.Ct. No. 14746, released January 1, 1984), and pending for the past half year on a petition for rehearing. Both cases are concerned with a "heart attack (acute myocardial infarction) which was an 'on the job accident.'" *Johnson, supra* (Huntley, J., dissenting). Conceptually, I experience considerable difficulty in rationalizing the different results in the two cases, and would think it better appellate practice to retain any decision in this case until the Court comes to grips with *Johnson.* Time constraints being as they are under the rules by which the Court directs the release of opinions having three votes, I yield to the majority view, but with reservations.

My dissenting thought is simply stated. In *Mager v. Garrett Freightlines,* relied upon by the author of today's opinion for the Court, the Court relied solely upon *Booth v. City of Burley,* again today relied upon. *Mager* was an industrial accident case; *Booth* was a claim for unemployment benefits, on appeal to the Industrial Commission from the Department of Employment. The Industrial Commission in such circumstance is an appellate tribunal.

In connection with another case presently under consideration, I have extensively reviewed *Booth,* and am fully convinced of its invalidity—which will be well-documented when our opinions are released in this other case.