702 P.2d 847

Wayne  E.  PLANTE,
Claimant-Respondent,

v.

KEN'S  ELECTRIC,
Employer-Respondent,

and

State of Idaho, Department of
Employment, Appellant.

No. 15183.

Supreme Court of Idaho.

July 8, 1985.

Hon. Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Roger T. Martindale, Deputy Atty. Gen., Boise, for appellant.

Jeffrey A. Child, Kim Jonathan Grosch, Coeur d'Alene, for claimant-respondent.

BISTLINE, Justice.

Wayne E. Plante has worked as an electrician for over 23 years. He was employed by Ken's Electric in March 1979, and laid off because of lack of work on August 28, 1981. Mr. Plante filed an unemployment benefits claim that same day. Thereafter, Ken's Electric reemployed Mr. Plante on a part-time basis while he continued to receive unemployment benefits. He was laid off from that work on April 29, 1982.

While Mr. Plante was employed at Ken's Electric, it was a union shop. Mr. Plante has been a member of the International Brotherhood of Electrical Workers since 1969. He is also a member of the local Spokane union.

After Mr. Plante was laid off in April 1982, he continued to receive unemployment benefits until they were exhausted. He then filed a claim for extended benefits. A Department of Employment representative explained to Mr. Plante that qualification for these benefits required a willingness on Mr. Plante's part to accept any work within his capabilities. Mr. Plante consented with the proviso that, because he was a union member, he could not accept work as a non-union electrician, nor accept electrical work offered by an employer not covered by a collective bargaining agreement. The representative replied that the Department did not refer union members to non-union work. Mr. Plante made it clear that other than non-union electrical work, he would accept any work offered him, and at the time of the hearing before the Industrial Commission, Mr. Plante was earning $4 an hour doing non-electrical work.

Backing up a bit, in early 1982, the owner of Ken's Electric was considering making the business a non-union shop. While Mr. Plante was still employed there the owner tried to convince Mr. Plante to resign from his union and work as a foreman of a non-union shop. Mr. Plante refused, stating that he did not want to lose his union pension benefits.

On July 1, 1982, Ken's Electric became a non-union employer. On July 19, the company informed the Department of Employment of an opening it had for an electrician. On that same day a Department representative informed Mr. Plante of the job opening at Ken's Electric, but he refused it, stating again that he could not take a non-union electrical job without being expelled from his union and losing union pension benefits. Accordingly, Mr. Plante did not apply for the job at Ken's Electric.

The rules of Mr. Plante's union prohibit members from accepting non-union electrical work. Had Mr. Plante accepted the job offer from Ken's Electric, he was faced with the prospect that his union would probably have fined him, and that if he would continue such work, the union would expel him. Additionally, upon expulsion from the union, Mr. Plante would have lost his pension benefit rights in two different union-funded and administered pension plans; he would have retained his pension rights in his local union's pension plan.

Because Mr. Plante failed to apply for the job offered by Ken's Electric, the Department of Employment issued a determination that Mr. Plante was ineligible for unemployment benefits effective July 18, 1982. Mr. Plante appealed to the Industrial Commission, which reversed the Department's determination.

The Commission held that Mr. Plante had good cause for refusing to apply for the job at Ken's Electric. The commission further held that Mr. Plante is entitled to extended benefits. From these two holdings the Department of Employment appeals.

Two issues are before us: 1) Whether Mr. Plante is ineligible for regular unemployment benefits because of his refusal to apply for concededly suitable work where the primary reason for such refusal is the fear of union fines, expulsion, and loss of pension rights which he faced if he took the non-union electrical job offered him; and 2) whether Mr. Plante is ineligible for federal extended benefits because of his refusal to apply for non-union electrical work to which he was referred. On both issues we affirm the Industrial Commission's conclusion that Mr. Plante is so eligible.

### I.

### A.

Both parties agree that the electrical job offer which Mr. Plante refused to apply for was suitable work. The Department of Employment argues that resolution of the suitability issue is dispositive of the good cause issue. Such an argument flies in the face of the applicable statutory law.

I.C. § 72–1366(f) states in pertinent part that to be eligible for unemployment benefits a claimant's unemployment must not be due to "his failure *without good cause* to apply for available suitable work or to accept suitable work when offered to him." (Emphasis added). It is readily apparent, therefore, that a claimant's refusal to apply for *suitable* work will only disqualify him or her if there is no good cause to justify such refusal. Thus, applying § 72–1366(f) requires two determinations: 1) whether a claimant had good cause to refuse to apply or accept such work; and 2) whether such work, which was refused by the claimant, is suitable work.

Our conclusion today that issues of good cause and suitability require separate determinations is supported by *Meyer v. Skyline Mobile Homes,* 99 Idaho 754, 759, 589 P.2d 89, 94 (1979), wherein we stated:

> *It is ... clear that good cause to refuse may exist even where the work offered is suitable; otherwise the good cause language used by the legislature would become mere surplusage, contrary to general principles of statutory construction.* See, e.g., *Norton v. Department of Employment,* 94 Idaho 924, 500 P.2d 825 (1972). However, when suitable work is offered, good cause to refuse the offer ordinarily must stem either from a temporary emergency or from some intolerable aspect of the particular job offered that is not considered in determining the suitability of the work. See *Swanson v. Minneapolis-Honeywell Regulator Co.,* 240 Minn. 449, 61 N.W.2d 526 (1953).

(Emphasis added).

*Accord, Czarlinsky v. Employment Security Agency,* 87 Idaho 65, 390 P.2d 822 (1964).

The Commission's conclusion in this case is harmonious with *Meyer.* The "intolerable aspect" of the job offered Mr. Plante is the resulting union expulsion, fines, and loss of pension benefits he would have faced had he taken the job. This "aspect" is not something that was considered when "suitability" of a job was determined. Rather, as mentioned above, it was considered when determining whether Mr. Plante had good cause not to apply for the job to which he was referred.

### B.

While the legislature has seen fit in I.C. § 72–1366(g)[1] to define what constitutes

---

1. I.C. § 72–1366(g) reads as follows:

(g) In determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, and other pertinent factors shall be considered. No employment shall, in any event, be deemed suitable and benefits shall not be denied to any otherwise eligible individual for refusing to accept new work or to hold himself available for work under any of the following conditions:

"suitable work," it has not done so with "good cause." This Court has defined "good cause" as follows:

"Good cause" within the meaning of I.C. § 72–1366(f) is not susceptible of an exact definition. Rather, the meaning of these words must be determined in each case from the facts of that case. *Saulls v. Employment Security Agency*, 85 Idaho 212, 377 P.2d 789 (1963).

In *Burroughs v. Employment Security Agency*, 86 Idaho 412, 414, 387 P.2d 473, 474 (1963), this court stated:

"In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive."

*Ellis v. Northwest Fruit & Produce*, 103 Idaho 821, 822–23, 654 P.2d 914, 915–16 (1982).

*Accord, Meyer, supra,* 99 Idaho at 759, 589 P.2d at 94 (1979) ("The test used in determining whether good cause is present continues to be whether a reasonable person would consider the circumstances resulting in a claimant's unemployment to be real, substantial, and compelling.")

▆▆▆ The determination of good cause, as can be seen from the definition given it by this Court, is a factual determination. Accordingly, our review of such a determination is whether substantial and competent evidence exists in the record to support the Commission's finding. *Ellis, supra,* 103 Idaho at 823, 654 P.2d at 916. We have reviewed the record and conclude that the Commission's decision that Mr. Plante had "good cause" to refuse to apply for the job referred to him is supported by substantial and competent evidence; we decline to set aside the Commission's view, which was that loss of substantial pension benefits, fines, and expulsion from a union constitutes good cause in not applying for a job that would produce such results.

Our conclusion today is further bolstered by the fact that the "legislature has concluded that the standards for eligibility may be less demanding when a claimant *declines an offer for a new job than when he or she elects to quit an existing job.*" *Meyer, supra,* 99 Idaho at 758, 589 P.2d at 93. (Emphasis added) (Distinguishing between the "good cause" language of I.C. § 72–1366(e) and § 72–1366(f)—the latter being the statute at issue in this case.)

The Department places heavy reliance upon *Norman v. Employment Security Agency*, 83 Idaho 1, 356 P.2d 913 (1960), to support its position. We find such reliance to be misplaced. In *Norman*, the claimant argued that a job offered him was not "suitable" within the meaning of Idaho's Employment Security Law. The claimant's reasoning was that had he accepted the job offered him, he would have been expelled from his union, and that such a threat rendered the job *unsuitable.*

This Court rejected such an argument. The Court was required to interpret I.C. § 72–1366(i)(3) (now I.C. § 72–1366(g)(3)). That paragraph states that a job is unsuitable if, as a condition of employment, the claimant must either join or resign from a bona fide labor organization. The Court held that § 72–1366(i)(3) is only applicable to instances where the above-quoted invalid condition of employment *is imposed by claimant's prospective employer.* In *Norman* it was not claimant's prospective employer, but his union, which was imposing the condition of which he was complaining. Accordingly, claimant's argument that the

(1) If the vacancy of the position offered is due directly to a strike, lockout, or other labor dispute;

(2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered;

(3) If, as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization.

job offered him was *unsuitable* was rejected.

We continue to adhere to *Norman's* holding; however, as can readily be seen, *Norman* is not applicable to the issue of whether union fines, expulsion, and loss of pension rights constitutes *good cause* for rejecting otherwise suitable work. On that point *Norman* is silent, and does not require or even suggest a holding contrary to that which we reach today. Accordingly, we affirm the Commission's conclusion that I.C. § 72–1366(f) does not render Mr. Plante ineligible for unemployment benefits, and that there is substantial and competent evidence in the record to support the Commission's determination that Mr. Plante had good cause to refuse otherwise suitable work that was offered him.

### II.

I.C. § 72–1367A sets forth the eligibility requirements for extended unemployment benefits. At the time that Mr. Plante was receiving extended benefits, § 72–1367A(c)(3)(A) [2] provided in part that:

> Notwithstanding the provisions of this section, payment of extended compensation under this act shall not be made to any individual for any week of unemployment in his eligibility period:
>
> 1. During which he fails to accept any offer of suitable work, as defined in subsection (a)(13), or fails to apply for any suitable work to which he was referred; ...

Section (a)(13) defined suitable work in the following manner:

> For purposes of this section only, the term "suitable work" means, with respect to any individual, any work which is within such individual's capabilities; except that, if the individual furnishes evidence satisfactory to the department that such individual's prospects for obtaining work in his customary occupation within a reasonably short period are good, the determination of whether any work is suitable work with respect to

such individual shall be made in accordance with the applicable state law.

An exception to § 72–1367A(c)(3)(A)1, quoted above, is § 72–1367A(c)(3)(C), which, at the time Mr. Plante was receiving extended benefits, stated:

> Extended compensation shall not be denied under subsection (c)(3)(A)1 to any individual for any week by reasons of a failure to accept an offer of, or apply for, suitable work:
>
> . . . .
>
> 3. If such failure would not result in a denial of compensation under the provisions of the applicable state law to the extent that such provisions are not inconsistent with the provisions of subsections (a)(13) and (c)(3)(D) of this section; . . . .

■ The Commission held that paragraph (c)(3)(C)3 was designed to grant extended benefits to claimants who are ineligible under paragraph (c)(3)(A)1, which is the case with Mr. Plante, "but who would be eligible for benefits under the state law provided that the difference in their eligibility under the two programs is not caused by the differences in the definitions of suitable or active work search under the two programs." R., Vol. 2, p. 23. We agree.

We also agree with the Commission that this is such a case. Mr. Plante did refuse to apply for suitable work, but is still eligible under state law for benefits because he had *good cause* to refuse such work. I.C. § 72–1366(f). Mr. Plante would be ineligible for extended benefits under I.C. § 72–1367A(c)(3)(A), except for paragraph (c)(3)(C)3. That paragraph makes Mr. Plante eligible, notwithstanding paragraph (c)(3)(A), because he is eligible under state law for unemployment benefits, which eligibility is not inconsistent with the definition of suitable work found in I.C. § 72–1367A. Accordingly, we affirm the Commission on this issue.

### III.

Idaho Department of Employment Rule 09.06.081 through .083 mandates that attor-

---

2. I.C. § 72–1367A has since been amended.

ney's fees and costs be granted to a claimant who is involved in an appeal to this Court from an administrative decision that was favorable to the claimant. Such is the case before us. Accordingly, attorney's fees and costs are awarded to Mr. Plante, with the proviso that such fees be reasonable and as "fixed by the director." Department of Employment Rule 09.06.082.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, J., concurs in the result.

BAKES, J., concurs in result in part I, dissents in parts II and III.

SHEPARD, Justice, with whom HUNTLEY, Justice, concurs, concurring in the result.

I concur in the result obtained by the majority, *i.e.*, that the commission's award of unemployment benefits should be affirmed and that attorney's fees on appeal should be awarded. I disagree, however, that a Department of Employment rule can in any manner or fashion control the actions or decisions of this Court. It is further my understanding that the Department of Employment rule purporting to award attorney's fees has been repealed and reenacted with modifications.