712 P.2d 521

**Rayton F. ULLRICH, SSA 518 32 1025, Claimant-Respondent,**

v.

**THORPE ELECTRIC, Employer-Respondent,**

**and**

**State of Idaho, Department of Employment, Appellant.**

No. 15524.

Supreme Court of Idaho.

July 9, 1985.

Rehearing Granted Oct. 3, 1985.

On Rehearing Dec. 18, 1985.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Roger T. Martindale (argued), and Larry Weeks (on brief), Deputy Attys. Gen., Boise, for appellant Dept. of Employment.

Michael F. Peacock, Kellogg, for claimant-respondent.

SHEPARD, Justice.

This is an appeal by the State of Idaho, Department of Employment, from the Industrial Commission's decision awarding claimant unemployment compensation after claimant failed to accept an offer of employment. The issues concern the interpretation and application of I.C. § 72–1366(f) and (g), which pertain respectively to the eligibility requirement of willingness to ac-cept suitable work, and to the statutory considerations for determining whether work is indeed suitable. We affirm the decision of the Industrial Commission, to the effect that while the work claimant offered was arguably suitable, nonetheless, claimant had good cause to reject it.

The facts of the case are as follows. Claimant worked as an electrician for the interested employer, Thorpe Electric, from February 1963 through February 1982, when he was laid off because the employer closed its business. Claimant was officially terminated on March 10, 1982. Members of the employer's family established a new corporation called Thorco, Inc. between February and March 1982, to carry on a business of the same nature as that which had been conducted by Thorpe Electric. Whereas Thorpe Electric had been a union shop, Thorco, Inc. had no hiring restrictions regarding union membership. Claimant had been a member of the International Brotherhood of Electrical Workers, Local No. 73, for 25 years.

The new company, Thorco, informed claimant that it had some openings for jobs in claimant's line of work at wages comparable to what claimant had formerly been earning. The referee found, and the commission adopted as its own decision, the following facts:

"Claimant was in fact offered work with Thorco, Inc. in February, 1982, but declined the offer because he did not wish to jeopardize his union status.

"If the Claimant were to accept non-Union work ... with Thorco, Inc., he would not only be in violation of the Unions [sic] constitution and subject to fine, he would also lose his entitlement to pension benefits."

Claimant filed an application for unemployment compensation immediately after he was laid off. He received benefits from February 13, 1982 through April 30, 1983. He filed a new claim for extended benefits on March 3, 1983, which claim the employer protested on the basis that claimant had refused an offer of suitable employment. On August 2, 1983, a claims examiner of

the Department of Employment (DOE) determined that claimant had refused available work, but that he had done so for good cause and was therefore eligible for benefits. The employer appealed, and a DOE appeals examiner, reversing the claims examiner, held that claimant had refused suitable work without good cause and was ineligible for benefits. Claimant appealed. The Industrial Commission ruled that the fact of Thorco's being a non-union shop did not render the offered work unsuitable. The commission did not decide whether the work was suitable, feeling that such determination was unnecessary, since it held that claimant had good cause for refusing the employment. The DOE appeals.

The appellant DOE relies upon I.C. § 72–1366(f) and (g), as support for its position that claimant should not receive unemployment compensation. Those provisions stated, in pertinent part, as of the time of the job offer in February 1982:

"**72–1366. Personal eligibility conditions.**—The personal eligibility conditions of a benefit claimant are that—

\*    \*    \*    \*    \*    \*

"(f) His unemployment is not due to his failure without good cause to apply for available suitable work as directed by a representative of the director or to accept suitable work when offered to him . . .

\*    \*    \*    \*    \*    \*

"(g) In determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, and other pertinent factors shall be considered. No employment shall, in any event, be deemed suitable and benefits shall not be denied to any otherwise eligible individual for refusing to accept new work or to hold himself available for work under any of the following conditions:

(1) If the vacancy of the position offered is due directly to a strike, lockout, or other labor dispute;

(2) If the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered;

(3) If, as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization.

\*    \*    \*."

Subsection (f) of I.C. § 72–1366 was slightly amended in 1983, but that amendment is of no consequence to this case.

■■■ Clearly, the key terms in these statutes, for our purposes, are "good cause" and "suitable." These two terms are not necessarily coextensive; a claimant always has good cause to refuse work that is unsuitable, but one may also have good cause to refuse work that is suitable. *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979). The fact that a labor union will impose sanctions upon a member who accepts a non-union job in the type of work covered by the union's bargain agreements does not render such work "unsuitable" under the statutory language of I.C. § 72–1366(g). *Norman v. Employment Security Agency*, 83 Idaho 1, 356 P.2d 913 (1960) (interpreting I.C. § 72–1366(i)(3) (1959), which language is now found in I.C. § 72–1366(g)(3)). Here, the commission found, under *Norman*, that the non-union character of the offered work did not make it unsuitable. It follows that, since the work was the same as the claimant had formerly done, the commission must have considered it to be suitable employment. We do not disturb the commission's treatment of the suitability question, but we find, as did the commission, that the outcome here rests upon the existence of good cause to decline the admittedly available work.

■■■ The Industrial Commission found that, had claimant accepted non-union work

with Thorco, Inc., he would have been in violation of the union's constitution, would have been subject to fine, and would have lost his entitlement to certain pension benefits. The commission concluded:

"The claimant refused the offer of work because he would have lost his Union pension benefits if he had accepted the offer of non-Union work which was within his trade.

"The referee concludes that the Claimant, in this case, had good cause for refusing the offer of work in a non-Union shop. At the time of the Industrial Commission hearing in this matter, the Claimant was fifty-one years of age and he had invested in excess of nineteen years of Union work in the accumulation of his Union pension benefits. The Claimant acted reasonably when, at the age of forty-nine with a number of years invested in his various Union pension plans, he declined an offer to work in a non-Union job because if he had accepted the job, that would have meant the loss of his Union pension benefits. The Claimant had real and substantial reasons for declining the February, 1982 Thorco, Inc. offer of work."

In reaching this finding, the commission relied upon testimony of claimant and of a union representative, regarding probable sanctions that would be imposed by the union in the event that claimant accepted non-union work as an electrician. The commission did not abuse its discretion in so interpreting the evidence. The meaning of "good cause" within the statute is a factual determination to be made by the commission on a case-by-case basis. *Berger v. Nez Perce Sheriff,* 105 Idaho 555, 671 P.2d 468 (1983); *Ellis v. Northwest Fruit & Produce,* 103 Idaho 821, 654 P.2d 914 (1982); *Saulls v. Employment Security Agency,* 85 Idaho 212, 377 P.2d 789 (1963). We will not overturn the commission's decision, where it is supported by substantial and competent, although conflicting, evidence. *Horner v. Ponderosa Pine Logging,* 107 Idaho 1111, 695 P.2d 1250 (1985); *Wood v. Quali-Dent Dental Clinics,* 107 Idaho 1020, 695 P.2d 405 (1985); *Rogers v. Trim*

*House,* 99 Idaho 746, 588 P.2d 945 (1979); Idaho Const. art. 5, § 9.

■ We deem the reasons given by claimant for his declining to accept the job offer in this case to satisfy the established standard for good cause. That standard was stated in *Burroughs v. Employment Security Agency,* 86 Idaho 412, 414, 387 P.2d 473, 474 (1963) as follows:

"In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive."

*Accord Ellis v. Northwest Fruit and Produce, supra.* We note, in affirming the commission, that the standards of eligibility for unemployment compensation may be less demanding when a claimant *declines* an offer of employment, as occurred here, than when he or she elects to *quit* an existing job. *Meyer v. Skyline Homes,* 99 Idaho 754, 758, 589 P.2d 89, 93 (1979), *citing* I.C. § 72–1366(c), –(h), and –(i), now codified as I.C. § 72–1366(c), –(j), and –(k).

In view of our disposition as explained above, we find it unnecessary to review the issue of claimant's entitlement to extended unemployment insurance benefits. *See,* in that regard, *Plante v. Ken's Electric,* 108 Idaho 809, 702 P.2d 847 (1985).

We affirm the decision of the Industrial Commission. Costs to claimant-respondent, to be paid by appellant DOE. No attorney's fees on appeal.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ., concur.

BAKES, J., concurs in the result.

## ON REHEARING

SHEPARD, Justice.

■ A petition for rehearing was filed and granted only asserting that the Depart-

ment of Employment now, or in the past, has promulgated a rule providing that when a claimant has received a favorable decision from an administrative decision of the Department of Employment, and that decision has been appealed and the claimant's favorable decision is affirmed, that in such case the Department of Employment will award attorney fees and costs to the claimant.

The Department of Employment, on rehearing, asserts that therefore it desires to award attorney fees to the claimant in the instant case, but that it is prevented from doing so by the Court's original opinion wherein it is noted that the Court awards no attorney fees on appeal.

We hold that the instant appeal was not brought frivolously or without foundation. Therefore the standards in *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979), are not met, and this Court does not therefore make an award of attorney fees. However, if the Department of Employment desires to nevertheless make an award of attorney fees pursuant to *its* rules, it is not barred from doing so.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, concurring in part and dissenting in part.

I am in agreement with the majority view that the Department of Employment can award attorney's fees if it wants to do so, but the Court itself should be awarding attorney's fees as suggested by the Department. Instead, the majority sets a record of dubious distinction. By refusing to award attorney's fees, it limits the precedential value *to one day* of a case decided this year.

*Plante v. Ken's Electric*, 108 Idaho 809, 702 P.2d 847 (1985) was released one day prior to *Ullrich.* Both *Ullrich* and *Plante* reached the same conclusion on other identical issues, and in *Plante* the Court's award of attorney's fees was unanimous, although Justice Shepard disagreed with

the grounds upon which the majority based the award:

I concur in the result obtained by the majority, i.e., that the Commission's award of unemployment benefits should be affirmed and *that attorney's fees on appeal should be awarded.*

*Plante, supra*, 108 Idaho at 814, 702 P.2d at 852 (emphasis added) (Shepard, J., concurring).

Today the Court, per Justice Shepard, does not explain how this Court denies attorney's fees in *Ullrich* but awards them in *Plante.* The entire decision-making process is thus laid suspect. Only in consistency and reason lies justice.

One is reminded of an applicable statement:

The most intolerable evil, however, under which we have lived for the past twenty-five years, has been the changing and shifting character of our judicial decisions, by which we have been deprived of the inestimable benefit of judicial precedents as a safeguard to our rights of person and property.

Modifying that passage to a slightly shorter time interval, I add only that as a Court we this day do little to display stability in the science of jurisprudence where case law is involved.