794 P.2d 271

Ethel Marie JENSEN,
Claimant–Appellant,

v.

F.H. SIEMSEN, M.D., and R.N. Peterson, M.D., Employers–Respondents,

and

State of Idaho, Department of Employment, Respondent.

Nos. 17686, 17695.

Supreme Court of Idaho.

June 14, 1990.

Rehearing Denied July 31, 1990.

Carl Follevaag, Coeur d'Alene, for claimant-appellant Jensen.

Jim Jones, Atty. General, Evelyn Thomas, Deputy Atty. General, Boise, Idaho, for appellant Dept. of Employment. Evelyn Thomas argued.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, Idaho, attorney for respondents Siemsen and Peterson. Ausey H. Robnett, III argued.

BOYLE, Justice.

This appeal is from a decision of the Industrial Commission which denied Ethel Marie Jensen unemployment compensation benefits. The appeals examiner for the Department of Employment held that Jensen (hereafter "claimant") had been subjected to sexual harassment and therefore had reasonable cause to resign her position. However, the appeals examiner denied unemployment compensation benefits to claimant because she failed to explore all the reasonable alternatives prior to terminating her employment.

Pursuant to I.C. § 72–1368(g), the Industrial Commission heard this matter de novo based upon the record of the proceedings before the Department of Employment appeals examiner. No additional evidence was admitted and the Commission issued its findings and conclusions denying benefits to claimant. The Commission held that the claimant failed to prove that she was sexually harassed and therefore lacked good cause for terminating her employment. We affirm the Commission's decision.

From March 17, 1986, until she left her employment on February 17, 1987, claimant worked as a secretary and receptionist for respondent physicians, Dr. F.H Siemsen, M.D., and Dr. R.N. Peterson, M.D. The claimant resigned her position alleging sexual harassment by Dr. Siemsen. The claimant complained of conduct by Dr. Siemsen which she found offensive and considered to be sexual harassment. In a hearing before the appeals examiner she testified that on several occasions Dr. Siemsen had unzipped his pants, ostensibly to tuck in his shirt, and claimed he would then manipulate his genitals and appeared to be masturbating. Claimant also alleged improper touching by Dr. Siemsen and that he often made sexual innuendos directed toward her.

Several co-employees, including the office manager, testified that they too had witnessed the shirt tucking behavior. One other witness testified that Dr. Siemsen appeared to be masturbating when tucking in his shirt and a former employee testified that he had touched her inappropriately. The office manager testified that she had received complaints from claimant and from other employees concerning this conduct. Dr. Siemsen acknowledged occasionally unzipping his trousers and tucking in his shirt while in view of his office staff. However, he denied that he was touching his genitals at this time or that he was aware that his conduct in tucking in his shirt was offensive to his employees. He also testified that he had no recollection of touching the claimant in an offensive manner. With regard to the alleged sexual innuendos, he stated that they were intended to be humorous and that the claimant generally laughed. Dr. Peterson stated that he was aware of Dr. Siemsen's shirt tucking actions and that it was offensive to some employees, but that he never saw Dr. Siemsen touch his genitals while engaging in this conduct.

Claimant testified that she complained to the office manager, concerning these incidents but Dr. Siemsen was never told about her complaints. Claimant testified that on January 6, 1987, she told Dr. Peterson about the incidents and stated she would be terminating her employment. Dr. Peterson testified that the claimant never used the term "sexual harassment" during this conversation. Dr. Peterson testified that on February 16, 1987, the day before claimant terminated her employment, she told him that she had been sexually harassed. Claimant discussed her concerns and allegations of sexual harassment with Dr. Siemsen on February 17, 1987, the last day of her employment. Thereafter, claimant left her employment at the doc-

tors' office and filed this claim for unemployment compensation benefits.

## I.

### Scope of Judicial Review

■ The Court's review of unemployment compensation cases is limited by the Idaho Constitution and prior decisions of this Court to reviewing only questions of law. Idaho Const. art. 5, § 9; *Puckett v. Idaho Dep't of Corrections,* 107 Idaho 1022, 695 P.2d 407 (1985); *Parker v. Saint Maries Plywood,* 101 Idaho 415, 614 P.2d 955 (1980); *Harris v. Green Tree, Inc.,* 100 Idaho 227, 596 P.2d 99 (1979); *Simmons v. Department of Employment,* 99 Idaho 290, 581 P.2d 336 (1978); *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978); *Hutchinson v. J.R. Simplot Co.,* 98 Idaho 346, 563 P.2d 404 (1977). Furthermore, our review in cases involving factual disputes is restricted to determining whether findings of fact by the Industrial Commission are supported by substantial and competent evidence in the record. *Burnside v. Gate City Steel Corp.,* 112 Idaho 1040, 739 P.2d 339 (1987); *Ullrich v. Thorpe Elec.,* 109 Idaho 820, 712 P.2d 521 (1985); *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978). As stated in *Booth,* we decline to "independently adopt findings of fact at variance with those of the Industrial Commission where such findings are supported by substantial and competent evidence in the record." 99 Idaho at 232, 580 P.2d at 78. Where the factual findings of the Industrial Commission are sustained by substantial and competent, though conflicting evidence, they will not be reversed on appeal. *Kyle v. Beco Corp.,* 109 Idaho 267, 707 P.2d 378 (1985); *Wood v. Quali–Dental Clinics,* 107 Idaho 1020, 695 P.2d 405 (1985); *Cornwell v. Kootenai County Sheriff,* 106 Idaho 823, 683 P.2d 859 (1984).

In I.C. § 72–1368(g), the legislature provided for a de novo review before the Industrial Commission based upon the record of the proceedings before the appeals examiner. The Industrial Commission's responsibility and scope of review in employment compensation claims is clearly set forth in I.C. § 72–1368(g) which provides in pertinent part:

> The record before the Commission shall consist of the record of proceedings before the appeals examiner, unless it appears to the Commission that the interests of justice require that the interested parties be permitted to present additional evidence. In that event, the Commission may, in its sole discretion, conduct a hearing to receive additional evidence or may refer the matter back to the appeals examiner for an additional hearing and decision. On the basis of the record of proceedings before the appeals examiner as well as any additional evidence, if allowed, the Commission shall affirm, reverse, modify, set aside or revise the decision of the appeals examiner or may refer the matter back to the appeals examiner for further proceedings.

In reviewing the instant case, the Industrial Commission complied with the direction of the legislature by reviewing the record of the proceedings before the appeals examiner. No additional evidence was presented during the Commission's review.

The applicable rule used to determine whether a claimant is entitled to unemployment compensation benefits is set forth in I.C. § 72–1366(e). Unemployment benefits may be awarded if:

> His unemployment is not due to the fact that he left his employment voluntarily without good cause connected with his employment, or that he was discharged for misconduct in connection with his employment.

■ Idaho law provides that claimant is eligible for unemployment compensation benefits, although she voluntarily terminated her employment, if she did so with "good cause," *Burroughs v. Employment Sec. Agency,* 86 Idaho 412, 387 P.2d 473 (1963); *Ellis v. Northwest Fruit & Produce,* 103 Idaho 821, 654 P.2d 914 (1982); *Boodry v. Eddy Bakeries Co.,* 88 Idaho 165, 397 P.2d 256 (1964), and explored all viable options prior to terminating her employment, *Ellis v. Northwest Fruit & Produce,* 103 Idaho 821, 654 P.2d 914 (1982);

**4**

*Fong v. Jerome School Dist.*, 101 Idaho 219, 611 P.2d 1004 (1979); *Rogers v. Trim House*, 99 Idaho 746, 588 P.2d 945 (1979). In order to constitute good cause, the circumstances which compel the decision to leave employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances. The standard of what constitutes good cause is the standard of reasonableness as applied to the average man or woman. *Burroughs v. Employment Sec. Agency*, 86 Idaho 412, 387 P.2d 473 (1963). The test used to determine good cause is whether a reasonable person would consider the circumstances resulting in a claimant's unemployment to be real, substantial and compelling. *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979).

█ The burden of proving and establishing statutory eligibility for unemployment benefits rests with the claimant. *Pyatt v. Idaho State Univ.*, 98 Idaho 424, 565 P.2d 1381 (1977). Thus, in the present case claimant had the burden to prove that the conduct exhibited by Dr. Siemsen created good cause for her to voluntarily leave her employment. Additionally, claimant must also prove that she pursued all reasonable alternatives prior to terminating her employment.

In its findings of fact and conclusions of law, the Commission concluded:

> Claimant did not have good cause to leave her employment. While the atmosphere in Dr. Siemsen's office may have been unprofessional at times, it did not rise to the level of sexual harassment. The Commission concludes that the Claimant failed to prove that she was sexually harassed by her employer. The Commission concludes that Claimant has failed to prove that good cause existed for her to voluntarily quit her job.

## II.

### Federal Sex Discrimination Guidelines Not Applicable

In making its decision, the Department of Employment appeals examiner applied the federal "Guidelines on Discrimination Because of Sex," which appear at 29 C.F.R. § 1604.11 (1980) (hereafter "Guidelines"). The record before us from the Industrial Commission does not indicate the standards applied by the Industrial Commission when it determined that the claimant was not subjected to sexual harassment and did not have good cause to terminate her employment. Due to this lack of consistency in the standards utilized by these two triers of fact, the claimant contends that this Court, in its review of the Commission's decision, should apply the federal Guidelines.

We agree with the claimant that clear, consistent standards should be applied by the triers of fact making decisions on unemployment benefit claims and acknowledge that there is a great need within the context of unemployment compensation benefits for a consistent, analytical, and objective legal standard against which to measure facts alleged to constitute sexual harassment. However, as unfortunate as it may be, no such statutory standards or agency rules exist under the Idaho unemployment compensation law.

The federal Guidelines were adopted by the Equal Employment Opportunity Commission (EEOC) to provide guidance to the courts and to administrative agencies that issue preliminary decisions under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e. The Guidelines declare sexual harassment to be a form of sex discrimination prohibited by Title VII and define sexual harassment in the workplace. The United States Supreme Court has stated that the Guidelines "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *General Elec. Co. v. Gilbert*, 429 U.S. 125, 141–42, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976) (*quoting from Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)).

Although the federal EEOC standards and Guidelines are appealing, they have not

been adopted by the Idaho legislature or by the Department of Employment through its rule making authority. Further, even if adopted by the legislature or the agency and thus subject to consideration, the Guidelines as presently crafted would not be applicable to the circumstances presented here because of the number of persons employed by the doctors. The federal Guidelines apply only to employers with fifteen or more employees and the doctors' office in the instant appeal employed substantially less than the required number of employees.

Although sexual harassment may constitute a "good cause" under I.C. § 72–1366(e), *Small v. Jacklin Seed*, 109 Idaho 541, 709 P.2d 114 (1985), the term "sexual harassment" itself does not appear in the language of the unemployment statute. If it did, then we would define and apply the term. However, since sexual harassment is not defined in the statute, we are not inclined to create judicial legislation in this area where the legislature has not spoken. It is more appropriate for the legislature, or the Department of Employment in its rules and regulations, to define "sexual harassment" and to establish guidelines for determining what constitutes sexual harassment. If the legislature desires to adopt and designate the federal Guidelines as the standard to be applied, then it should do so rather than the courts. Without such adoption by our legislature or the agency, we decline to judicially apply the federal EEOC Guidelines' standards to Idaho unemployment cases. The Idaho legislature has expressly adopted and established the "good cause" standard to be applied in evaluating unemployment compensation claims. It is by that standard which we must review the findings of the Industrial Commission in this appeal.

In the instant case claimant elected to proceed before the Department of Employment on a theory of sexual harassment as the good cause for leaving her employment. In *Small v. Jacklin Seed*, 109 Idaho 541, 709 P.2d 114 (1985), the underlying claim was sexual harassment, however the sole issue presented was whether the findings of the Industrial Commission were supported by substantial evidence. *Id.* at 541, 709 P.2d at 114. In *Small* we remanded because the Commission had not considered all the evidence and several key exhibits were not contained in the record. No such issues are raised in the instant appeal and we must determine from the record whether the Industrial Commission's findings are supported by substantial and competent evidence. The Industrial Commission in its de novo review found that the record did not support a sexual harassment claim and denied claimant unemployment benefits. Our responsibility is not to retry the facts of the underlying claim but to determine whether the Commission erred as a matter of law in its fact finding role. Thus, with regard to the claimant's claim for unemployment compensation benefits, we are required to apply the Idaho legislature's standard set forth in I.C. § 72–1366(e) which requires a showing of "good cause" for the voluntary termination of the claimant's employment prior to qualifying for an award of unemployment benefits.

Although the Industrial Commission used the claimant's term of "sexual harassment" in its findings of fact and conclusions of law, it is clear that the Commission considered the facts and weighed the evidence and concluded that "good cause" did not exist for voluntary termination of claimant's employment. It is not necessary that the Industrial Commission define sexual harassment in reaching its decision. Our review of the various guidelines, standards and cases defining sexual harassment does not lead us to conclude that the Industrial Commission erred as a matter of law in finding that the facts presented to it do not constitute sexual harassment or good cause for claimant voluntarily leaving her employment.

 This Court's review of the Industrial Commission's de novo review and decision that the claimant lacked "good cause" to leave her employment is limited to determining whether the findings of facts by the Commission are supported by substantial and competent evidence. *Burnside v. Gate City Steel Corp.*, 112 Idaho 1040, 739 P.2d

339 (1987); *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978). In the present case there was substantial and competent although conflicting evidence supporting the Commission's decision. Every factual allegation made by the claimant was either disputed or explained by the employer, or refuted by testimony to the effect that the claimant had misinterpreted the events. The claimant failed to prove that Dr. Siemsen was masturbating while tucking in his shirt. Although the employer's shirt-tucking style may have been offensive and unprofessional, as were his occasional sexual innuendos, the Commission, as the finder of fact, concluded that the conflicting evidence contained in the record did not sufficiently prove the conduct alleged by the claimant. Based on the evidence presented to the Industrial Commission, the claimant did not substantiate her claims of sexual harassment arising out of Dr. Siemsen's conduct and therefore she did not prove or establish to the satisfaction of the finder of fact, that a reasonable person under the circumstances would terminate her employment. Although we may well have decided the case differently had we been the trier of facts, it is not our role on appeal to retry the case, to weigh the evidence as a trier of the facts or to determine the facts in the case. Where the factual findings of the Industrial Commission are sustained by substantial and competent, though conflicting evidence, we are compelled to defer to the findings of the Industrial Commission, Idaho Const. art 5, § 9; *Guillard v. Dep't of Employment,* 100 Idaho 647, 603 P.2d 981 (1979), and will not reverse its decision on appeal. *Kyle v. Beco,* 109 Idaho 267, 707 P.2d 378 (1985); *Wood v. Quali-Dental Clinics,* 107 Idaho 1020, 695 P.2d 405 (1985).

Therefore, we affirm the Industrial Commission's factual finding and decision that good cause to terminate claimant's employment did not exist, and claimant is therefore not entitled to unemployment compensation benefits.

Costs to respondents; no attorney fees on appeal.

BAKES, C.J., and WALTERS, J. Pro Tem., concur.

JOHNSON, Justice, dissenting.

I am unable to accept a disposition of this case that does not give some guidance concerning the meaning of the term "sexual harassment."

The majority says that sexual harassment may constitute "good cause" for voluntary termination of employment under I.C. § 72–1366(e). The majority cites *Small v. Jacklin Seed Co.,* 109 Idaho 541, 709 P.2d 114 (1985), for this proposition. In *Small,* the Commission denied a claim for unemployment benefits where an employee voluntarily quit her employment, alleging sexual harassment. This Court remanded the case to the Commission for reconsideration.

The Commission states in its decision in the present case that following remand in *Small,* the Commission found that the claimant had established that she had been sexually harassed by her employer and had good cause to leave her employment. Apparently, the Commission had some idea about the meaning of "sexual harassment." However, the only guidance the Commission has given as to its understanding of the meaning of the term is the portion of its decision in this case stating that in *Small,* "the Claimant experienced subtle sexual comments and innuendos, overt advances of a sexual nature, and the supervisor's taking photographs of female employees while bent over."

Here, in denying claimant unemployment compensation the Commission stated that the actions of Dr. Siemsen were unprofessional, but "did not subject the Claimant to sexual harassment." Apparently, the Commission knows sexual harassment when it sees it, but has not developed a definition of the term.

The majority decision eschews defining the term on the ground that it does not appear in the statute. In my view, if sexual harassment may constitute good cause under I.C. § 72–1366(e), and if the Commission is adjudicating rights to unemployment compensation based on an ad hoc

application of "sexual harassment," it is our obligation to define the term.

I accept that the EEOC Guidelines are not applicable. However, we should not leave the term without a legal meaning. Otherwise, I do not see how we can review a decision of the Commission that states, as the decision in this case does, that the actions of an employer did not constitute sexual harassment. Without giving the terms some meaning, we will be left to accepting the Commission's decision without review.

One court has said:

The theory [of sexual harassment] rests upon conduct which can be characterized as sexual. "Sex" in this instance does not mean gender. Rather, it is used pursuant to its more popular meaning. Thus, while the harassment may be directed at a member of the female *sex*, it is a harassment which plays upon the stereotypical role of the female as a sexual object.

*Turley v. Union Carbide Corp.*, 618 F.Supp. 1438, 1441–42 (S.D.W.Va.1985).

Harassment is used "to describe words, gestures and actions which tend to annoy, alarm and abuse (verbally) another person." BLACK'S LAW DICTIONARY 645 (5th ed. 1979). Using these elements, I would define sexual harassment to be words, gestures or actions which tend to annoy, alarm or verbally abuse another person of either sex by playing upon the stereotypical role of the person as a sexual object.

In its findings of fact, the Commission recites the allegations of the claimant and Dr. Siemsen's responses. The Commission does not resolve which version of the facts it accepted. The claimant alleged:

1. While she was bent over filing, Dr. Siemsen intentionally brushed his pelvis area against her buttocks.

2. When she came to visit Dr. Siemsen during her leave of absence, he hugged her, manipulating his body back and forth against her breasts, and told her how good she felt.

3. When a mechanic came to the doctor's office to return the claimant's car, Dr. Siemsen came out and stated that the claimant was not going to leave with the mechanic until the mechanic had a physical examination.

4. On six occasions Dr. Siemsen would stand in the hallway in the claimant's view and unzip his pants to tuck in his shirt and, while doing so would "manipulate his genitals." The claimant said she knew he was manipulating his genitals because it took forty-five seconds to a minute for him to tuck in his shirt.

5. On one occasion the claimant told Dr. Siemsen she was leaving to go to another doctor for her annual pelvic exam. Dr. Siemsen told her he would do it for her.

6. Dr. Siemsen called the claimant into an examination room while he was performing various types of examinations on male patients.

7. Dr. Siemsen encouraged an eighty-two year old male patient to think that the claimant was romantically interested in him.

The Commission concluded that the most outrageous allegation was that Dr. Siemsen took forty-five seconds to tuck in his shirttail. I am uncertain whether this statement means that this was the only allegation the Commission believed, or whether the Commission did not consider the other allegations constituted sexual harassment. At the very least, the Commission should state which version of the facts it accepted and why the facts did not amount to sexual harassment.

I would vacate the Commission's order and remand with directions to the Commission to state the facts it finds were established by the evidence and whether those facts constituted sexual harassment in light of the definition of sexual harassment given above.

McDEVITT, J., concurs.