814 P.2d 29

Donna D. STEFFEN, SSN 504–44–9910, Claimant–Appellant,

v.

DAVISON, COPPLE, COPPLE & COP-PLE, Employer, and State of Idaho, Department of Employment, Respondents.

No. 18681.

Supreme Court of Idaho,
Boise, February 1991 Term.

June 26, 1991.

---

Donna Steffen Atkins, Boise, pro se.

Larry J. EchoHawk, Atty. Gen., Debbie Z. Straight, Deputy Atty. Gen., Boise, argued, for respondent State of Idaho.

BOYLE, Justice.

This is an appeal from an order of the Industrial Commission which affirmed a decision of the State of Idaho Department of Employment appeals examiner ordering repayment of unemployment insurance benefits. We are called upon to determine whether the record supports the appeals examiner's determination that appellant Donna Steffen voluntarily quit her employment without good cause and that she received an overpayment of unemployment benefits.

Donna Steffen, an experienced legal secretary, began working as a secretary for respondent law firm on March 27, 1989, on a probationary status, and continued that employment until May 5, 1989. Prior to working for respondent she had been receiving unemployment insurance benefits based on wages earned from a previous employer.

A review of the record before us indicates that within one week after Steffen was hired by respondent, another secretary was terminated. Steffen became concerned that she could not perform adequately to satisfy the attorneys and she perceived some instability in the secretarial staff. In addition, Steffen grew to mistrust her supervising attorney and feared her employment might not be permanent. On May 4, 1989, Steffen found a handwritten note on her desk which her supervising attorney had made the night before while talking with a client. When Steffen asked the attorney about the note, he wadded it up and laughingly told her that he did those things to make her think she was losing her mind and that he might ask her to find a file that does not exist. Steffen became upset as a result of this incident and felt the attorney was intentionally attempting to make her job more difficult. Steffen quit her employment with the law firm on May 5, 1989.

Steffen was paid full or partial unemployment benefits for the period of May 6, 1989 through September 23, 1989, with the exception of the week ending June 24, 1989, for which she received no benefits. When Steffen filed her unemployment ben-

efit claim for weeks ending April 29, and May 6, 1989, she did not report any wages earned or employment even though she had worked for respondent law firm during that period of time. In addition to seeking information about earnings and employment, item 8(c) of the claim form filled out by Steffen asks "If you are no longer working for any of the above employers, for other than lack of work, check a box and explain in # 11." The foregoing question has three boxes for placement of a mark alongside the words "Discharge," "Quit," and "Other." (See attached Claimant's Exhibit 5.) Steffen did not answer this question and did not check any of the three boxes for the reason that she did not feel it necessary to report her separation from respondent law firm because she considered her employment to be probationary.

Following a hearing on the Notice of Overpayment, the appeals examiner found that claimant voluntarily quit her employment with respondent law firm without good cause and ordered the case returned to the claims examiner for repayment of $2,504.00 in overpaid unemployment benefits. The Industrial Commission reviewed the record of the proceedings and held that the decision of the appeals examiner was supported by substantial and competent evidence. We affirm.

## I.

### Scope of Judicial Review

It is well established that the Court's review of unemployment compensation cases is limited by the Idaho Constitution and prior decisions of this Court to reviewing only questions of law. Idaho Const. art. 5, § 9; *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990); *Puckett v. Idaho Dep't of Corrections,* 107 Idaho 1022, 695 P.2d 407 (1985); *Parker v. Saint Maries Plywood,* 101 Idaho 415, 614 P.2d 955 (1980); *Harris v. Green Tree, Inc.,* 100 Idaho 227, 596 P.2d 99 (1979); *Simmons v. Department of Employment,* 99 Idaho 290, 581 P.2d 336 (1978); *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978); *Hutchinson v. J.R. Simplot Co.,* 98 Idaho 346, 563 P.2d 404 (1977). In addition, our

review in cases involving factual disputes is restricted to determining whether findings of fact by the Industrial Commission are supported by substantial and competent evidence in the record. *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990); *Burnside v. Gate City Steel Corp.,* 112 Idaho 1040, 739 P.2d 339 (1987); *Ullrich v. Thorpe Elec.,* 109 Idaho 820, 712 P.2d 521 (1985); *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978). As this Court stated in *Booth,* we decline to "independently adopt findings of fact at variance with those of the Industrial Commission where such findings are supported by substantial and competent evidence in the record." 99 Idaho at 232, 580 P.2d at 78. We have likewise held that where the factual findings of the Industrial Commission are sustained by substantial and competent, though conflicting evidence, they will not be reversed on appeal. *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990); *Kyle v. Beco Corp.,* 109 Idaho 267, 707 P.2d 378 (1985); *Wood v. Quali–Dent Dental Clinics,* 107 Idaho 1020, 695 P.2d 405 (1985); *Cornwell v. Kootenai County Sheriff,* 106 Idaho 823, 683 P.2d 859 (1984).

## II.

### Industrial Commission Review

In enacting I.C. § 72–1368(g), the legislature provided that the Industrial Commission's review would be based upon the record of the proceedings before the appeals examiner. The Industrial Commission's responsibility and scope of review in employment compensation claims is clearly set forth in I.C. § 72–1368(g).

The record before the Commission shall consist of the record of proceedings before the appeals examiner, unless it appears to the Commission that the interests of justice require that the interested parties be permitted to present additional evidence. In that event, the Commission may, in its sole discretion, conduct a hearing to receive additional evidence or may refer the matter back to the appeals examiner for an additional hearing and decision. On the basis of the record of proceedings before the appeals examiner

as well as any additional evidence, if allowed, the Commission shall affirm, reverse, modify, set aside or revise the decision of the appeals examiner or may refer the matter back to the appeals examiner for further proceedings.

In reviewing the instant case, the Industrial Commission reviewed the record of the proceedings before the appeals examiner and no additional evidence was presented.

## III.

### Eligibility For Unemployment Benefits

The applicable rule used to determine whether a claimant is entitled to unemployment compensation benefits is set forth in I.C. § 72–1366(e). Unemployment benefits may be awarded if:

His unemployment is not due to the fact that he left his employment voluntarily without good cause connected with his employment, or that he was discharged for misconduct in connection with his employment.

■ Idaho law in this regard is well established and clearly provides that claimant Steffen is eligible for unemployment compensation benefits, although she voluntarily terminated her employment, if she did so with "good cause," *Jensen v. Siemsen*, 118 Idaho 1, 794 P.2d 271 (1990); *Ellis v. Northwest Fruit & Produce*, 103 Idaho 821, 654 P.2d 914 (1982); *Boodry v. Eddy Bakeries Co.*, 88 Idaho 165, 397 P.2d 256 (1964); *Burroughs v. Employment Sec. Agency*, 86 Idaho 412, 387 P.2d 473 (1963), and explored all viable options prior to terminating her employment, *Ellis v. Northwest Fruit & Produce*, 103 Idaho 821, 654 P.2d 914 (1982); *Fong v. Jerome School Dist.*, 101 Idaho 219, 611 P.2d 1004 (1979); *Rogers v. Trim House*, 99 Idaho 746, 588 P.2d 945 (1979). In order to constitute good cause, our cases provide that the circumstances which compel the decision to leave employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical; there must be some compulsion produced by extraneous and necessitous circumstances, and the standard

of what constitutes good cause is the standard of reasonableness as applied to the average man or woman. *Jensen v. Siemsen*, 118 Idaho 1, 794 P.2d 271 (1990); *Burroughs v. Employment Sec. Agency*, 86 Idaho 412, 387 P.2d 473 (1963). We have held that the test used to determine good cause is whether a reasonable person would consider the circumstances resulting in a claimant's unemployment to be real, substantial and compelling. *Jensen v. Siemsen*, 118 Idaho 1, 794 P.2d 271 (1990); *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 589 P.2d 89 (1979).

In addition, the law also provides that a claimant may be denied unemployment benefits if there is a wilfull failure to report a material fact relating to the claim for benefits. I.C. § 72–1366(*l*) provides:

(*l*) A benefit claimant shall not be entitled to benefits if it is determined that he has wilfully made a false statement or representation or wilfully failed to report a material fact in order to obtain said benefits for a period of fifty-two (52) weeks from the date of said determination. Said claimant shall also be liable to repay to the fund any sums received for a week in which the claimant made a false statement, misrepresentation, or failed to report a material fact.

■ The burden of proving and establishing statutory eligibility for unemployment benefits rests with the claimant. *Jensen v. Siemsen*, 118 Idaho 1, 794 P.2d 271 (1990); *Pyeatt v. Idaho State Univ.*, 98 Idaho 424, 565 P.2d 1381 (1977). Thus, in the present case, Steffen has the burden to prove that the conduct of her supervising attorney created good cause for her to voluntarily leave her employment and that she pursued all reasonable alternatives prior to terminating her employment. After hearing the evidence, the appeals examiner found that Steffen voluntarily left her employment with respondent law firm without good cause and that there was continuing work available to her. The decision of the appeals examiner contains a thorough recitation of the factual background and a thoughtful analysis and application of the law to the facts. The Industrial Commis-

sion thereafter reviewed the record of the proceedings and adopted the appeals examiner's findings of fact and conclusions of law.

## IV.

### *Evidence Supports Findings of Ineligibility For Benefits*

■ A review of the appeals examiner's decision as adopted by the Industrial Commission reveals thoughtful consideration of the facts presented and contains an analysis of the conflicting evidence. After citing the applicable controlling case law and statutes the appeals examiner made the following factual analysis of the case:

The claimant quit her employment because she felt that the attorney could not be trusted since they had terminated another employee and she might be terminated at some future date. She also quit because she asserts that because she felt that the attorney was trying to "drive her crazy." The evidence in the record establishes the claimant's job was not in any jeopardy. The person who had been discharged had been making errors and was not able to perform the work to the standards of the employer. The claimant had been given assurances by her employer and had been given a substantial increase in wage to communicate their commitment to her and the position. The evidence in the record establishes that the incident which caused the claimant to submit her resignation was one in which the attorney was joking with her. The claimant was overly sensitive to the situation. The claimant has not established that her only alternative was to leave the employment. The claimant has not established good cause in connection with employment for having voluntarily quite the work.

The case presented at the hearing level involves an interpretation and resolution of conflicting evidence. Based on the conflicting evidence submitted, the appeals examiner was not persuaded that Steffen left her employment for good cause. Accordingly, Steffen was found to have received an overpayment of $2,504.00 which must be repaid. I.C. § 72–1369. Based on the evidence presented at the hearing level, claimant Steffen did not prove or establish to the satisfaction of the finder of fact that a reasonable person under those circumstances would terminate employment.

■ The appeals examiner expressly found that Steffen wilfully failed to report material information to the Department of Employment in her application for unemployment benefits. Our review of the record, and particularly the continued claim report form for the April 29 and May 6, 1989 period where item 8(c) was not completed (see attached Claimant's Exhibit 5), satisfies us that the finding of wilfull failure to report a material fact is supported by the evidence. I.C. § 72–1366(*l*) provides that a claimant is not entitled to receive unemployment benefits if it is determined that the claimant wilfully failed to report a material fact. The information sought in item 8(c) of the continuing claim form is a material fact to be considered by the Department of Employment in the evaluation of a claimant's eligibility or entitlement to unemployment benefits.

Where the factual findings of the Industrial Commission are sustained by substantial and competent, though conflicting evidence, we defer to those findings, Idaho Const. art. 5, § 9; *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990); *Guillard v. Department of Employment,* 100 Idaho 647, 603 P.2d 981 (1979), and we will not reverse the Industrial Commission's decision on appeal. *Jensen v. Siemsen, id.; Kyle v. Beco,* 109 Idaho 267, 707 P.2d 378 (1985); *Wood v. Quali–Dent Dental Clinics,* 107 Idaho 1020, 695 P.2d 405 (1985).

We therefore affirm the decision of the appeals examiner and the Industrial Commission which found that Steffen did not have good cause to terminate her employment, and ordered that she must repay the overpaid unemployment benefits to the Employment Security Fund. Idaho Code § 72–1366(*l* ).

Affirmed. Costs to respondent. No attorney fees on appeal.

BAKES, C.J., and JOHNSON and McDEVITT, JJ., concur.

# EXHIBIT 5

IANT - Informational messages may appear here     ADDENDUM D, page 1 of 2

MARK THIS REPORT BETWEEN 05/07/89 AND 05/13/89 TO AVOID LOSS OF PAYMENT.

YOU EARNED MORE THAN 1.5 TIMES YOUR WBA FOR WEEKS ENDING 04/15/89 AND
 2/89.  UNDER IDAHO LAW YOUR EARNINGS EXCEED THE MAXIMUM ALLOWABLE TO
VE BENEFITS; THEREFORE NO PAYMENT HAS MADE.

## IDAHO CONTINUED CLAIM REPORT

amant Name and Address

DONNA D STEFFEN
1224 CHAMBERLIN
BOISE          ID   83706          MAY 1 5 1989

| UI | 201 | 190.50 |
|---|---|---|
| Cost Center | EXP | Authorized By |
| -00030 | 82 10 | 259 |

3 Social Security Number
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-0 STEF

Issue Code                    Issue Code

TELEPHONE NUMBER (Area Code - NUMBER)     208-386-9596

| | 5 WEEK 1 | 6 WEEK 2 |
|---|---|---|
| | Week Ending Date 04/29/89 | Week Ending Date 05/06/89 |

7 During the weeks claimed:

| | Week 1 | Week 2 |
|---|---|---|
| a. Was there any time when you were not able to or available for work? | ☐Yes ☒No | ☐Yes ☒No |
| b. Were you out of your local area? | ☐Yes ☒No | ☐Yes ☒No |
| c. Did you apply for retirement, or has your retirement changed? | ☐Yes ☒No | ☐Yes ☒No |
| d. Did you refuse a job, a referral to a job, or fail to report to a job or job interview? | ☐Yes ☒No | ☐Yes ☒No |
| e. Did you attend any school or training? | ☐Yes ☒No | ☐Yes ☒No |

(If Any Answer To 7a Through 7e Is YES, Explain In Detail, In #11 On Reverse Side)

During the weeks claimed, did you work or have other reportable income (including
commission work & national guard drills)? If YES, list below (see UI HANDBOOK)     ☒Yes ☐No     ☐Yes ☒No

| DATES WORKED WEEK 1 | EMPLOYER NAME AND ADDRESS | TOTAL HOURS WORKED | EARNINGS BEFORE DEDUCTIONS |
|---|---|---|---|
| 5/1 To 5/5 | Davison, Copple, P.O.Box 1583, Boise 837 | 40 | 376.15 |
| | | TOTAL EARNINGS WEEK 1 | 376.15 |

| DATES WORKED WEEK 2 | EMPLOYER NAME AND ADDRESS | TOTAL HOURS WORKED | EARNINGS BEFORE DEDUCTIONS |
|---|---|---|---|
| From To | | | |
| | | TOTAL EARNINGS WEEK 2 | |

| DATES | OTHER REPORTABLE INCOME (see UI HANDBOOK) | HOURS | $ AMOUNT | HOURS | $ AMOUNT |
|---|---|---|---|---|---|
| From To | 8a. Self Employment | | | | |
| | 8b. Holiday, Vacation, Bonus or Severance (Explain in #11) | | | | |

c. If you are no longer working for any of the above employers, for other than lack of work, check a box and explain in #11     ☐ Discharge     ☐ Quit     ☐ Other

9. COMPLETE ONLY IF CHANGED SINCE YOUR LAST REPORT          MAIL REPORT TO ADDRESS SHOWN BELOW

| Street Address | | Phone No. (Area Code - No.) |
|---|---|---|
| City, State, Zip Code | | County | FIPS |
| DATE FILING RECEIPT DATE: | | |
| REPORTED REPORT | | TRANSFER WEEKS |

IDAHO DEPARTMENT OF EMPLOYMENT
105 SOUTH 3RD
BOISE, ID              83735-0030

EXHIBIT # 5
Page 1 of 2 Pages

BISTLINE, Justice, concurring specially.

The finding made by the appeals examiner and adopted by the Industrial Commission that Donna Steffen is ineligible for unemployment benefits is most troubling as it turns largely on the fact that the appeals examiner simply did not believe that Steffen was reasonable in her reaction to certain stressful events that occurred while she was working at Davison, Copple, Copple and Copple. While it is clear that Steffen could not withstand the stress, the appeals examiner found that the mythical "average man or woman" would have been able to. What is reasonable and what is "overly sensitive" (in the words of the appeals examiner) can be an exceedingly difficult judgment to make, requiring in essence a determination whether the frustrated employee was or was not psychologically tough enough.

At the hearing before the appeals examiner Steffen presented considerable evidence demonstrating the precariousness of her job situation, which Terry Copple, her supervising attorney, and Joyce Johnson, the office manager, attempted to downplay. Steffen became uneasy about her job security when one week after she arrived one of the firm's secretaries with three years of employment at the firm was fired for making too many errors. That firing reduced the number of secretaries from four to three. Another secretary, Barbara Feasel, was due to return to the firm in the near future after a maternity leave. This worried Steffen because one of the firm's lawyers, Scott Ludwig, told her that there was not work for four secretaries and that the senior partner, Robert Copple, would not allow four secretaries in the office. Tr. 23. Joyce Johnson and Scott Ludwig told Steffen that Barbara Feasel would not be coming back to work. However, when Steffen called Feasel, Feasel insisted that she was coming back, that she had three years seniority, that the firm had paid for two months of maternity leave, and that Don Copple, the attorney in charge of personnel decisions, had assured her that she had a job when she came back from maternity leave. Tr. 23.

Steffen believed that no one was giving her straight answers about her future at the firm, and that she could not talk to the senior partner, Robert Copple, about the problem. On this issue of whether or not Steffen could have talked to the senior partner about her job security, Joyce Johnson, the loyal office manager who was called as a witness by the law firm, testified as follows:

EXAMINER: Did you ever tell her she would be fired on the spot if she ever went in and talked to Robert Copple?

A. I may have said that there was a girl, that I was told in the past, prior to my employment, that tried to discuss a personal office, I guess, problem with him and he did not like it. He more or less let her go pretty much on the spot. But I don't recall telling her that she would be fired on the spot.

Tr. 87. In that equivocating response is found a substantial degree of truth supporting the claimant's worries.

Steffen decided to leave the job the day after the incident occurred involving the "joke" made by her supervising attorney occurred. Steffen testified:

A. Okay. On Thursday morning, Terry Copple had been at my desk and I had asked him what this piece of yellow paper was for. There was a name and a phone number on it. He grabbed it and wadded it up and threw it away and he just laughed and he said, 'Well, I just leave those things laying around to make you think you're losing your mind.'

. . . .

Q. Did you ask if he was joking?

A. Well, he was standing there laughing like he was joking. To him it's a joke. To an employee it's not a joke. When she knows that he has already done that to another employee.

Tr. 25–26.

The appeals examiner simply was not persuaded by any of Steffen's testimony and ruled that Steffen was overly sensitive to the situation and had not proved that her only alternative was to leave the job. While this conclusion appears to be rather

unfair and callous, the factual findings of the appeals examiner, as adopted by the Industrial Commission, will not be reversed on appeal when supported by substantial and competent evidence in the record. *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990). As there was testimony that tended to minimize the seriousness of Steffen's concerns, it cannot be said that there was not substantial evidence to support the appeals examiner's findings. Equally substantial evidence supports the claimant. The appeals examiner obviously found Donna Steffen's testimony to be less than credible, and a majority of this Court's members decline to intervene.

Accordingly, I bow to the weight of past and present authority and concur, albeit not without reluctance.