# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 38331

LINCOLN F. MCNULTY, )
)
  Claimant-Appellant, ) Boise, January 2012 Term
)
v. ) 2012 Opinion No. 45
)
SINCLAIR OIL CORPORATION, dba ) Filed: March 5, 2012
SUN VALLEY CO.; THE SAWTOOTH )
CLUB; Employers; and FIRST LIGHT ) Stephen W. Kenyon, Clerk
INDUSTRIES, INC., Major Base )
Employer; and IDAHO DEPARTMENT )
OF LABOR, )
)
  Respondents-Respondents on Appeal. )
_____ )

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Industrial Commission is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to respondent.

Cynthia J. Woolley, Ketchum, and John R. Kormanik, Meridian, for appellant. John R. Kormanik argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, for respondent. Tracey K. Rolfsen argued.

_____

**W. JONES, Justice**

## I. NATURE OF THE CASE

Appellant, Lincoln F. McNulty, worked as a ski patroller for Sinclair Services Company as a member of the Sun Valley Resort from 2005 to 2010. Once the ski season ended in April of 2009, McNulty filed for unemployment benefits effective April 19, 2009, through November 28, 2009. During those off-season months, McNulty began working part-time at the Sawtooth Club for some extra income. However, McNulty failed to report such employment or any earnings from the Sawtooth Club to the Idaho Department of Labor when he filed for unemployment benefits each week. The Idaho Department of Labor discovered the discrepancy and a claims

1

investigator spoke with McNulty and ultimately issued an Eligibility Determination that McNulty was ineligible for benefits because he willfully made false statements or failed to report material facts in order to obtain benefits.

On July 21, 2010, Appeals Examiner Shelton conducted a telephone hearing and affirmed the Eligibility Determination. McNulty appealed to the Idaho Industrial Commission. On October 21, 2010, the Commission issued its Decision and Order concluding that McNulty willfully failed to report material facts in order to obtain benefits. On December 2, 2010, McNulty appealed to this Court, arguing that his failure to report was not willful, the facts were not material, and that he should be eligible for a waiver of the requirement to repay the unemployment benefits.

## II. FACTUAL AND PROCEDURAL BACKGROUND

For approximately five years, McNulty worked for Sinclair Services Company as a member of the Sun Valley Resort ski patrol. A typical ski season begins in late November and ends in the middle of April. In the past, McNulty filed for unemployment benefits during the off-season while he was not working as a ski patroller. When the ski season ended on April 18, 2009, McNulty again filed a claim for unemployment benefits effective April 19, 2009, through November 28, 2009. During that same seven month time period, McNulty also began picking up shifts at the Sawtooth Club for supplemental income. McNulty failed to report his employment, or any wages earned from working at the Sawtooth Club, to the Idaho Department of Labor, ("IDOL" or the "Department"), when he filed for unemployment benefits.

Each week that McNulty filed a claim report, the system (either online or over the telephone) asked the claimant "[d]id you work for any employers during the week claimed, including National Guard or Reserve?" Despite his part-time employment at the Sawtooth Club, each week McNulty responded "No." IDOL discovered the discrepancy based on what McNulty reported and what his employers reported. A claims investigator for the Department, Carolynn Peterson, contacted McNulty and asked him to explain the wage discrepancies between what he and his employers reported as earnings. After speaking with McNulty over the phone, Peterson issued an Eligibility Determination finding that McNulty was ineligible for benefits because he willfully made false statements or failed to report material facts in order to obtain benefits. In Peterson's notes, she indicated that McNulty "did not report the work and earnings because he thought he could earn so much and it wouldn't matter. He wasn't sure why he thought this or

2

how much he thought he could earn before he didn't have to report it." Peterson also found that McNulty failed to contact his local office to verify whether he was reporting accurately. IDOL then issued a Determination of Overpayment and a Federal Additional Compensation Determination of Overpayment on June 23, 2010. McNulty filed a request for an appeals hearing, protesting the Department's determination.

On July 21, 2010, a telephone hearing was conducted by Appeals Examiner Joyce Shelton. McNulty participated in the hearing, but was not represented by counsel. During the hearing, McNulty testified that he had been filing for benefits while he was employed by the Sawtooth Club, but that he did not report any of his earnings "[b]ecause they were an insignificant amount of money and they weren't affecting the benefit." Appeals Examiner Shelton affirmed the Eligibility Determination and denied McNulty's request to waive the overpayment requirement. On August 4, 2010, McNulty appealed to the Idaho Industrial Commission (the "Commission").

The Commission conducted a de novo review of the record, including the audio recording of the telephone hearing and the briefs submitted by McNulty and IDOL. On October 21, 2010, the Commission issued its Decision and Order affirming in part and reversing in part the decision of the appeals examiner. The Commission found that McNulty willfully failed to report material facts for the purpose of obtaining unemployment benefits. As a result, the Commission concluded that McNulty was ineligible for benefits during the weeks effective April 26, 2009, through May 16, 2009; May 31, 2009, through July 4, 2009; July 12, 2009, through October 17, 2009; October 25, 2009, through November 28, 2009; and April 25, 2010, through May 1, 2010. However, the Commission reversed the appeals examiner's decision regarding McNulty's ineligibility for benefits during the weeks ending October 24, 2009, and February 13, 2010, because the record did not support a finding that he worked or had earnings during those two weeks. On December 2, 2010, McNulty appealed to this Court to review the Commission's decision.

### III. ISSUES ON APPEAL

1. Whether the Industrial Commission erred in determining that McNulty willfully failed to report material facts for the purpose of obtaining unemployment benefits?

2. Whether the Industrial Commission erred in concluding that McNulty was not eligible for a waiver from the requirement to repay benefits?

3. Whether McNulty is entitled to attorney's fees on appeal?

3

In reviewing decisions of the Industrial Commission on appeal to this Court, Idaho Code section 72-732 sets forth the standard of review. This Court may affirm an order or award made by the Commission, "or may set it aside only upon the following grounds: (1) the commission's findings of fact are not based on any substantial competent evidence; (2) the commission has acted without jurisdiction or in excess of its powers; (3) the findings of fact, order or award were procured by fraud; (4) the findings of fact do not as a matter of law support the order or award." I.C. § 72-732; *Ewins v. Allied Sec.*, 138 Idaho 343, 345–46, 63 P.3d 469, 471–72 (2003). This Court will not disturb the Commission's findings of fact unless they are clearly erroneous and not supported by substantial and competent evidence. *Ewins*, 138 Idaho at 346, 63 P.3d at 472 (citing *Dennis v. School Dist. No. 91*, 135 Idaho 94, 96, 15 P.3d 329, 331 (2000)). "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl v. Ballard Med. Prod., Inc.*, 138 Idaho 653, 657, 67 P.3d 1265, 1269 (2003) (citing *Hughen v. Highland Estates*, 137 Idaho 349, 48 P.3d 1238 (2002)). Nevertheless, the Court exercises free review over the Commission's legal conclusions. *Ewins*, 138 Idaho at 346, 63 P.3d at 472 (citing *Moore v. Melaleuca*, 137 Idaho 23, 26, 43 P.3d 782, 785 (2002)).

## V. ANALYSIS

### A. The Commission Did Not Err in Determining that McNulty Willfully Failed to Report Material Facts for the Purpose of Obtaining Unemployment Benefits

Idaho Code section 72-1366(12) provides that a "claimant shall not be entitled to [unemployment] benefits for a period of fifty-two (52) weeks if it is determined that he has willfully made a false statement or willfully failed to report a material fact in order to obtain benefits." The claimant bears the burden of proving statutory eligibility for unemployment benefits. *Steffen v. Davison, Copple, Copple, & Copple*, 120 Idaho 129, 132, 814 P.2d 29, 32 (1991) (internal citations omitted). McNulty argues that the facts he failed to report are not material, that his failure to report his employment was not willful, and that there is no substantial and competent evidence to support the Commission's findings.

#### 1. McNulty Failed to Report a Material Fact

McNulty asserts that his failure to report his part-time employment was not material because even if he had reported his earnings, they would not have affected the outcome of his benefits. McNulty argues that his failure to report earnings is similar to the facts presented in *Artis v. Morrison-Knudson Company*, where a claimant denied being unable to work at any time

during the week, despite a week-long hospitalization. 107 Idaho 1109, 1110, 695 P.2d 1248, 1249 (1985). The Court reversed the Commission's finding that Artis made a false statement of material fact because even though Artis may have been unable to work during the hospitalization, the statute provided that no claimant shall be ineligible for benefits due to an illness or disability. *Id.* This Court reasoned that the misrepresentation was not material because "the statute controlled the situation without the need for any exercise of discretion on the part of the Department." *Id.* In other words, Artis' misrepresentation was irrelevant because his hospitalization statutorily entitled him to receive benefits that week and the Department lacked the authority to deny benefits under those circumstances. *See id.*

McNulty contends that his unreported employment and wages are irrelevant to the determination of his eligibility for benefits because such a determination is similarly governed by statute which precludes any exercise of discretion on the part of IDOL. This Court finds that McNulty's reasoning is misguided. Although it is true that Idaho Code section 72-1367 supplies the Department's "Benefit Formula," which calculates the amount of earnings that will impact a claimant's benefits, a key element to the formula requires having accurately reported earnings. The case at hand is distinguishable from *Artis* because the statutory benefit formula cannot be applied unless McNulty accurately supplies his earnings. Unlike *Artis*, where the claimant's misrepresentation could not have impacted his benefits because the statute expressly precluded such a result, here, McNulty's misrepresentations about his employment could have affected his benefits.

In *Meyer*, this Court declared that "a fact is material if it is relevant to the determination of a claimant's right to benefits; it need not actually affect the outcome of that determination." *Meyer v. Skyline Mobile Homes*, 99 Idaho 754, 760, 589 P.2d 89, 95 (1979). What could be more material in seeking unemployment benefits than whether the claimant is employed? It should not be forgotten that not reporting his earnings is only part of the problem, McNulty also failed to report his employment. This Court rejected the proposition that a claimant may misrepresent or withhold information if a full disclosure would not have affected his right to benefits. *Id.* In *Meyer*, the Court went on to explain that "the legislature intended the [Department]–not the claimant–to make the initial determination of eligibility and benefit levels. . . . A complete and unqualified disclosure can best be promoted by defining materiality to include any information that is relevant to the determination of a claimant's right to benefits." *Id.*

5

This Court finds that a claimant's employment status is relevant to the determination of a claimant's right to unemployment benefits. Moreover, the status of employment is material to the Department for several other reasons, including collecting information regarding the availability of jobs and the suitability of work within a particular location.

Based on the record, and McNulty's own admissions from the hearing, the Commission found that McNulty failed to accurately report his employment and earnings for the weeks at issue. This Court upholds the Commission's finding that the facts McNulty failed to report (his employment and subsequent earnings from working part-time at the Sawtooth Club) were material because his earnings were relevant to the determination of McNulty's right to benefits and could have affected the amount of benefits McNulty was entitled to receive.

## 2. McNulty's Failure to Report Constituted Willful Conduct

Every week for approximately twenty-seven (27) weeks, McNulty filed a claim for benefits. He filed his original claim online and then used the Department's Tele-claim system for the remainder of the weeks at issue. Every time McNulty filed a claim report, the system asked the claimant "[d]id you work for any employers during the week claimed, including National Guard or Reserve?" At the hearing, McNulty acknowledged that he read and or heard the instructions to report all *employment* and earnings.[1] (Emphasis added). When Appeals Examiner Shelton asked McNulty why he did not report any of his earnings from working at the Sawtooth Club, McNulty replied "[b]ecause they were an insignificant amount of money and they weren't affecting the benefit." Throughout the entire investigation, McNulty repeatedly made contradictory claims that the Department led him to believe that he did not have to report earnings that were of an insignificant amount. During an initial interview by the Department, McNulty was asked "why [he] fail[ed] to report earnings during the weeks in question" and he replied "I thought I didn't have to report anything as long as I had not earned over $120." When the IDOL interviewer asked him to identify who told him that information, McNulty explained that he read it on the internet, but could not recall when or where. Then, at the hearing, McNulty

---

[1] McNulty ignored the fact that the Department's question asked him to report any employment, separate to the question of earnings. Appeals Examiner Shelton asked McNulty the following questions at the hearing:
> Question: "When you file for benefits are you asked a series of questions?"
> McNulty's Answer: "Yes, you are."
> Question: "Okay, are you asked if you worked?"
> McNulty's Answer: "You are."
> Question: "And what was your response?"
> McNulty's Answer: "My response was that I was not working."

testified that he failed to report his employment because an IDOL representative told him that he could earn up to $284.00 per week without affecting his benefit amount.

On appeal, McNulty argues that even if his failure to report his employment and earnings was material, his failure to report was not willful because he "was not trying to obtain benefits to which he was not entitled" and he did not intend to "do anything consciously wrong." In his brief to the Court, McNulty asserts that he misunderstood the Department's question asking "did you work for any employers" to mean did he work enough that he earned an amount large enough to affect his benefit.

In *Meyer*, this Court explained that it construes the term "willful" as follows:

"(Willfully) implies simply a purpose or willingness to commit the act or make the omission referred to. It does not require any intent to violate law, in the sense of having an evil or corrupt motive or intent. It does imply a conscious wrong, and may be distinguished from an act maliciously or corruptly done, in that it does not necessarily imply an evil mind, but is more nearly synonymous with 'intentionally,' 'designedly,' 'without lawful excuse,' and therefore not accidental."

*Meyer*, 99 Idaho at 761, 589 P.2d at 96 (quoting *Archbold v. Huntington*, 34 Idaho 558, 565, 201 P. 1041, 1043 (1921)). The Court further reiterated that the legislature intended to disqualify claimants who knowingly or consciously fail to report material facts, but not to punish accidental omissions due to negligence or misunderstanding. *Id.*

This Court upholds the Commission's finding that McNulty's failure to report his employment was willful. The question posed by the Department was clear and unambiguous– "did you work for any employers?" Although McNulty claims that he was informed by an IDOL representative that he could earn up to $284.00 without affecting his benefits, he did not assert that he was told he did not have to report his employment. Moreover, the Department clearly communicated that *all* earnings, regardless of whether they impact one's benefits, must be reported when filing a claim. Each time McNulty filed a claim for unemployment benefits, the Department's system asked him to report any employment and earnings and warned him that if he failed to report all employment and earnings it could be considered fraud and his benefits could be denied. McNulty also acknowledged receiving the Department's Unemployment Insurance Claimant's Benefit Rights, Responsibilities, and Filing Instructions booklet (the "Booklet") and reading the pages which instructed him to "report all work and all earnings." The Booklet also explained that claimants can work part-time and still receive benefits, but that

benefits may be reduced depending upon the claimant's earnings. Specifically, the Booklet stated: "You can earn up to one-half of your weekly benefit amount and still receive the full weekly benefit amount for the week. However, you must still report all amounts earned each week, even if gross earnings are less than half your weekly benefit amount."

Based on the information provided and the clarity of the question, McNulty was properly informed of his obligation to report any employment and all earnings, regardless of their amount or impact on his benefits. Moreover, McNulty had filed for unemployment benefits in the past and was aware of the process. Nevertheless, he knowingly failed to report his employment and his wages because he "believed" they would not impact his benefits. McNulty fails to understand that whether his earnings impact his benefits is not a determination for him to make. It is the duty of the Department of Labor to make benefit determinations. Furthermore, although McNulty testified that he failed to report his employment due to the insignificant amount of his earnings, he had no justification for his failure to report his earnings during the weeks that he earned over $284.00. At the hearing, McNulty acknowledged that there were four weeks in which his earnings amounted to more than $284.00, which is what he considered the threshold amount necessary to obligate reporting, yet still reported that he had not worked that week (effectively reporting $0 as his earnings). Specifically, the record shows that McNulty earned $360.25 for the week ending May 2, 2009; $409.50 for the week ending May 9, 2009; $381.25 for the week ending October 10, 2009; and $330.78 for the week ending October 31, 2009. Yet, when Appeals Examiner Shelton asked him why he did not report his earnings during those weeks, McNulty replied "I don't have a good reason. Maybe I just didn't keep track of the money that I earned." McNulty's claimed misunderstanding lacks credibility because McNulty did not even follow his own rules. Even when he earned more than $284.00, he still reported no employment and no earnings. Even at oral argument, McNulty's counsel conceded that he could not think of any reason why a claimant would not report his employment earnings if he truly believed that they would not impact his benefits, other than to avoid inquiry by the Department. Therefore, the Court finds that there is substantial and competent evidence in the record to support the Commission's finding that McNulty's failure to report was willful and not because of a genuine misunderstanding of his obligation to report all employment and earnings.

3. *The Commission's Findings Are Supported by Substantial and Competent Evidence*

McNulty argues that the evidence contained in the record does not support the Commission's findings that McNulty's failure to report was willful or that his withholding was done "in order to obtain benefits." This Court finds that a review of the record, including the transcript of the telephone hearing, supports the Commission's findings that McNulty's failure to report his employment was willful and done in furtherance of obtaining unemployment benefits. McNulty acknowledged that he heard the instruction to report any employment and earnings, and admitted that he did not report his employment or earnings from the Sawtooth Club. McNulty attempted to justify his failure to report on a misunderstanding that he was not required to report wages less than $284.00 because such earnings would not affect his benefit. However, McNulty also admitted that he did not keep track of the amount he earned and failed to report his earnings during the four weeks where his wages amounted to more than $284.00. McNulty acknowledged receiving the Handbook and did not object to its admission into evidence. He also acknowledged the Department's record of earnings from the Sawtooth Club as accurate and made no objections to the accuracy of the figures at the hearing. McNulty's failure to report his employment was committed each week that he filed a claim for unemployment benefits. It is important to note that it only takes one reporting violation for the Department to determine that a claimant has willfully failed to disclose a material fact which can make that individual ineligible for unemployment benefits for the following fifty-two (52) week benefits period. *See* I.C. § 72-1366(12). McNulty misrepresented being unemployed every week for several months. This Court holds that the record supports the Commission's findings with substantial and competent evidence.

**B.  The Commission Did Not Err in Concluding that McNulty was Ineligible for a Waiver of the Requirement to Repay Benefits**

Idaho Code section 72-1369(1) provides that any person who received benefits for which he was not entitled shall be liable to repay the benefits, and the benefits shall be considered overpayments. The Department determined, and the Commission upheld, that McNulty was not eligible to receive unemployment benefits because he willfully failed to report material facts in order to obtain benefits. Further, monetary civil penalties shall be assessed for each determination that claimant made a false statement, misrepresentation, or failed to report a material fact to the Department as follows: "(a) Twenty-five percent (25%) of any resulting overpayment for the first determination; (b) Fifty percent (50%) of any resulting overpayment

9

for the second determination; and (c) One hundred percent (100%) of any resulting overpayment for the third and any subsequent determination." I.C. § 72-1369(2).

On June 23, 2010, the Department issued a Determination of Overpayment of unemployment insurance benefits in the amount of $10,498.00. McNulty was also receiving an additional $25.00 per week in federal compensation. The Department issued another Determination of Overpayment of federal additional compensation in the amount of $725.00. Combining both overpayment figures amounted to $11,223.00 and the Department also imposed a civil penalty of $2,534.00 for a total sum of $13,757.00 due. McNulty argues that the Commission erred in failing to grant him a waiver of the requirement to repay the overpayment.

*1. McNulty Is Not Entitled to a Waiver of the Requirement to Repay State Benefits*

The statute allows a waiver to be granted under limited circumstances. Idaho Code section 72-1369(5) states:

> The director may waive the requirement to repay an overpayment, other than one resulting from a false statement, misrepresentation, or failure to report a material fact by the claimant, and interest thereon, if:
>
> (a) The benefit payments were made solely as a result of department error or inadvertence and made to a claimant who could not reasonably have been expected to recognize the error; or
>
> (b) Such payments were made solely as a result of an employer misreporting wages earned in a claimant's base period and made to a claimant who could not reasonably have been expected to recognize an error in the wages reported.

This Court affirms the Commission's conclusion that McNulty was ineligible for waiver because McNulty's requirement to repay was due to his failure to report a material fact to the Department. McNulty's requirement to repay is not because of the Department's error and it was not because of an employer's misreporting. Here, the requirement to repay was triggered by McNulty's failure to report. The Court finds that the Commission did not err because under the circumstances, the Department has no discretion to grant McNulty a waiver.

*2. McNulty Is Not Entitled to a Waiver of the Requirement to Repay Federal Benefits*

The repayment of federal benefits is governed by federal law. If a state agency has determined that a person received payments to which he or she was not entitled, the person shall be liable to repay such overpayment amount to the state agency. 19 U.S.C. § 2315(a)(1). The requirement to repay federal benefits may be waived if both of the following criteria are met:

10

(A) the payment was made without fault on the part of such individual, and

(B) requiring such repayment would cause a financial hardship for the individual (or the individual's household, if applicable) when taking into consideration the income and resources reasonably available to the individual (or household) and other ordinary living expenses of the individual (or household).

*Id.* § 2315(a)(1)(A)(B).

McNulty argues that he was not at fault because he did not disclose a fact that he knew or should have known was material. In light of the fact that McNulty claimed he thought he only needed to report earnings that could impact his benefits, (earnings above $284.00), and still failed to report his earnings during the weeks that he actually earned more than $284.00. Federal regulations outline how to determine whether fault exists. The regulations instruct administrative agencies that an affirmative finding that a person made a material misrepresentation that he or she knew or should have known was inaccurate or failed to disclose a material fact which resulted in the overpayment precludes granting a waiver. 20 C.F.R. § 617.55(a)(2)(i)(A).

Here, the Department determined that McNulty received benefits to which he was not entitled because of his failure to disclose material facts. McNulty's failure to report his employment and subsequent earnings from the Sawtooth Club is what triggered his ineligibility. This Court upholds the Commission's conclusion that McNulty is ineligible for a waiver of the requirement to repay benefits.

## C.     McNulty Is Not Entitled to Attorney's Fees

McNulty requests attorney's fees and costs on appeal under Idaho Code section 12-117. However, I.C. § 12–117(1) does not allow a court to award attorney fees in a review of an administrative decision. *Smith v. Washington Cnty.*, 150 Idaho 388, 391, 247 P.3d 615, 618 (2010). Even if the Court had the power to award attorney's fees in this case, McNulty is not the prevailing party, and thus, would not be entitled to attorney's fees.

## VI. CONCLUSION

This Court affirms the Industrial Commission's conclusion that McNulty willfully failed to disclose material facts in order to obtain unemployment benefits. As such, McNulty is ineligible for the benefits he received April 26, 2009, through May 16, 2009; May 31, 2009, through July 4, 2009; July 12, 2009, through October 17, 2009; October 25, 2009, through November 28, 2009; April 25, 2010, through May 1, 2010; and the fifty-two (52) week period

11

effective June 20, 2010, through June 18, 2011. The Court also affirms the Commission's finding that McNulty was ineligible for a waiver and must repay the overpayment of both state and federal benefits as well as any applicable interest and penalties. Costs are awarded to the Department.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.